**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| IN RE: BPS DIRECT, LLC and CABELA'S, LLC, WIRETAPPING LITIGATION | MDL NO. 3074 2:23-md-03074-MAK |
|---|---|

## PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF SESSION DATA

## INTRODUCTION

Plaintiffs Brian Calvert, Heather Cornell, Timothy Durham, Marilyn Hernandez, Greg Moore, Peter Montecalvo, Arlie Tucker, and Brittany Vonbergen (collectively "Plaintiffs") bring this motion to compel Defendants BPS Direct, LLC, d/b/a Bass Pro Shops ("BPS") and Cabela's LLC ("Cabela's") (collectively, "Defendants") to produce documents responsive to Plaintiffs' Request for Production No. 7.  This case is about Defendants' use of session replay code procured from third-party session replay providers to intercept electronic communications with Defendants' websites.  Defendants' interception results in the creation of session replay data, which includes information regarding the who, what, when, and where of Defendants' surreptitious recording.

On August 14, 2023, Plaintiffs served their first set of Requests for Production of Documents, including Request No. 7, which calls for the production of: "All Session Replays related to Plaintiffs and the Class Members."  On September 27, 2023, Defendants responded to Request No. 7 as follows:

> Defendants object to this Request to the extent that it seeks information about putative class members prior to class certification. Defendants also object to this Request as it is not proportional to the needs of the case and is overly burdensome. As stated in response to Interrogatory Number 2, there are 23.1 million sessions available for the prior 30-day time period. Moreover, in the ordinary course of business, Session Replays are not personally identifiable. Defendants are therefore unable to respond to this Request as to Plaintiffs.

During a meet and confer on October 30, 2023, Defendants confirmed that they were standing on their objections.  Defendants' first objection is inconsistent with the Court's clear guidance and the operative scheduling order.  Defendants' proportionality objection points to a single fact: that a 30-day period contained 23.1 million sessions.  But large numbers alone do not substantiate a proportionality objection, and Defendants have proffered no information regarding any anticipated cost or burden of production to substantiate their proportionality objection.

Defendants have represented that the session replay data at the heart of Plaintiffs' case and responsive to Request No. 7 is accessible on a third-party platform maintained by the session replay provider Quantum Metric, Inc. ("QM").  As an alternative to Defendants' production, Plaintiffs proposed that Defendants provide Plaintiffs and their experts with read-only access to QM's platform.  Defendants rejected Plaintiffs' proposal, invoking their objections to Request No. 7.

On September 1, 2023, Plaintiffs served QM with a subpoena duces tecum, including Request No. 3, which calls for the production of: "All Data Recordings and/or Session Replays related to Plaintiff and the Class Members, including but not limited to underlying metadata."

On October 13, 2023, QM responded to Request No. 3 as follows:

> Pursuant to confidentiality provisions in Defendants' Enterprise Service Terms and Conditions with Quantum, Defendants have informed Quantum that they do not consent to Quantum's production of their data, information, or documents until the parties have determined the scope of discoverable information in this action and Court adjudication of any dispute raised to the Court. Quantum otherwise objects to this Request for the following reasons. Quantum objects to the defined terms "Data Recording" and "Session Replays" the extent they call for a legal conclusion that data captured by Defendants' use of Quantum's technology was copied, recorded, intercepted, captured, read, observed, re-routed, forwarded, redirected, and/or received in satisfaction of any one of the Wiretapping Statutes at Issue. Quantum objects to the undefined term "metadata" as vague and ambiguous. Quantum objects to this Request as overbroad as to time.

QM's response does not include an objection based on either proportionality or burden.  QM has confirmed that it possesses, but will not produce, responsive session data until receiving Defendants' consent pursuant to the confidentiality provisions in Defendants' contract with QM. Defendants have confirmed that they will not consent to QM's producing responsive data.

## ARGUMENT

**I.    THE COURT SHOULD OVERRULE DEFENDANTS' OBJECTION TO PRODUCING INFORMATION ABOUT CLASS MEMBERS PRIOR TO CLASS CERTIFICATION BECAUSE IT IS INCONSISTENT WITH THE COURT'S ORDERS AND THE PARTIES' AGREEMENTS**

The Court has been clear: discovery is open for all purposes and must proceed in accordance with the Court's orders.  Pursuant to Case Management Order No. 1, Plaintiffs' expert reports addressing class certification issues are due on February 23, 2024, with merits expert reports due August 2, 2024.  (ECF No. 52 ¶13.)  All fact and expert discovery must be completed by August 30, 2024.  (*Id.* ¶8.)

Taking Defendants' objections at face value, Defendants do not intend to produce responsive documents regarding class members until after the Court rules on Plaintiffs' motion for class certification.  This is inconsistent with the Court's orders and is patently unworkable.  Plaintiffs' motion for class certification is not due until August 2, 2024, the same day merits expert reports are due, and less than one month before the close of discovery.  Defendants' objection is also inconsistent with the parties' agreements as memorialized by Case Management No. 1, which confirmed that the parties had agreed "to several procedural steps to mitigate pretrial delay including[]" that "[t]here is no need for phased discovery."  (*Id.* ¶2(j).)

The Court should thus overrule Defendants' objection on the basis that Plaintiffs seek information about class members prior to class certification.

**II.   THE COURT SHOULD OVERRULE DEFENDANTS' PROPORTIONALITY OBJECTION BECAUSE EACH OF THE FACTORS BEARING ON PROPORTIONALITY WEIGH IN FAVOR OF PRODUCTION**

Proportionality considers the "importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the

proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). A party asserting a proportionality objection bears the burden of producing "specific information to address the proportionality factors." *In re Lincoln Nat'l COI Litig.*, No. 16-CV-6605, 2019 WL 5073573, at *4 (E.D. Pa. July 19, 2019) (quoting *Nerium Skincare, Inc. v. Olson*, No. 3:16-CV-1217-B, 2017 WL 277634, at *3 (N.D. Tex. Jan. 20, 2017). Each of the factors weighs in favor of production.

**Importance of the Issues at Stake**. In assessing the importance of the issues at stake, the Court considers "the significance of the substantive issues, as measured in philosophic, social, or institutional terms." Fed. R. Civ. P. 26, adv. Comm. notes. Plaintiffs' claims join key questions regarding the scope of permissible surveillance on the Internet. Plaintiffs allege that Defendants' surreptitious tracking represents an egregious breach of social norms underlying the right to privacy, *e.g.*, ¶¶216, 288, 331, 394, 433,[1] and the statutes under which Plaintiffs sue seek to vindicate important public interests. *E.g.*, ¶301 (wiretap statutes seek to curtail "the uncontrolled development and unrestricted use of modern electronic surveillance," which has been termed a "grave danger[] to the privacy of all citizens"). This factor thus weighs in favor of production.

**Amount in Controversy**. The amount in controversy considers "the amount the plaintiff claims or could claim in good faith." Bᴏʟᴄʜ Jᴜᴅ. Iɴsᴛɪᴛᴜᴛᴇ, Guidelines and Practices for Implementing the 2015 Discovery Amendments Concerning Proportionality (3d ed. 2021) ("Bolch") at 3. The amount in controversy in this action well exceeds any cost associated with the discovery requested. Plaintiffs assert claims arising under state and federal wiretap statutes associated with substantial statutory damages for each violation.[2] Many of these statutes also

---

[1]      Cites to "¶_" and "¶¶__" are to paragraphs of the Consolidated Class Action Complaint, ECF No. 53.

[2]      ¶185 (Federal Wiretap Act - statutory damages of $100 or $10,00 per day for each day of violation, whichever is greater); ¶220 (California Invasion of Privacy Act - statutory damages of

provide for punitive damages and attorneys' fees.  This factor thus weighs in favor of production. *Bell v. Reading Hosp.*, No. CV 13-5927, 2016 WL 162991, at *3 (E.D. Pa. Jan. 14, 2016) (amount in controversy factor weighs in favor of production where requested discovery "would certainly not exceed the amount of controversy in this matter"); *Consumer Fin. Prot. Bureau v. Navient Corp.*, No. 3:17-CV-101, 2018 WL 2088760, at *2 (M.D. Pa. May 4, 2018).

**Relative Access to Relevant Information**.  In assessing the relative access to information, the Court considers "the extent to which each party has access to relevant information in the case." Bolch at 4.  Defendants and QM are the only entities with access to the session replay data.  This factor thus weighs in favor of production.

**The Importance of the Discovery**.  The discovery sought here, the actual session data of Plaintiffs and class members, is the information going to the heart of Plaintiffs' claims.  The session data should be produced because it represents *prima facie* evidence of Defendants' unlawful interception and recording.  *Resser v. J.B. Hunt Transp., Inc.*, No. 1:21-CV-01041, 2022 WL 1240859, at *4 (M.D. Pa. Apr. 27, 2022) (ordering production where "the importance of the discovery may be determinative of the issue whether the plaintiff can prove liability").  The session data evidences with precision the exact contents of the communications Defendants intercepted from Plaintiffs and class members, including any information entered on Defendants' websites (*e.g.*, search terms) and all other communicative acts (*e.g.*, hovering without clicking over links). Each session is associated with metadata that records to the second the precise time of the

---

$5,000 per violation); ¶261 (Maryland Wiretapping and Electronic Surveillance Act - liquidated damages of $100 per day for each day of violation or $1,000, whichever is higher); ¶316 (Massachusetts Wiretapping Statute - same); ¶420 (Pennsylvania Wiretapping and Electronic Surveillance Control Act - same); ¶ 362 (Missouri Wiretap Act - liquidated damages at $100 per day of violation or $10,000, whichever is greater).

interception and the length of a visit, evidencing exactly when Defendants intercepted Plaintiffs' and class members' communications.

The session data also contains highly relevant information bearing on class certification issues. Understanding the session data is critical to Plaintiffs' experts' understanding as to how class members can be identified, which bears directly on issues such as numerosity and ascertainability. *See, e.g.*, *Kelly v. RealPage Inc.*, 47 F.4th 202, 223 (3d Cir. 2022) ("[M]atching of records is precisely the sort of exercise we have found sufficiently administrable to satisfy ascertainability[. . . .]"). Certain session data contains precise identifying information about a given website visitor, including their first and last name and email address. From each session, Defendants and QM are able to derive a visitor's location from the IP address recorded. As Plaintiffs' expert reports bearing on class certification are due in less than 110 days, (ECF No. 52 ¶13), Plaintiffs and their experts require access to this information to determine and prepare their arguments in support of class certification. This factor thus weighs in favor of production.

**The Parties' Resources and Whether the Burden or Expense of the Proposed Discovery Outweighs Its Likely Benefit**. In assessing the parties' resources, the Court considers "what resources are available to the parties for gathering, reviewing, and producing information and for requesting, receiving, and reviewing information in discovery." Bolch at 5. The "party in the best position to provide information about the burdens, expense, or benefits of the proposed discovery ordinarily will bear the responsibility for doing so." *Id.* at 10. However, if a party "uses technology or other methods that are unreasonably expensive, these additional, unreasonable expenses should not be considered." *Id.* at 11. In weighing the claims of burden against the likely benefit, the Court applies an "objective reasonableness standard." *Id.*

Here, any purported burden on Defendants is self-inflicted because QM, the entity hosting the requested session data, has not interposed an objection on the basis of either proportionality or burden.  Where Defendants "are not required to produce any information, there is no burden on them, let alone an undue burden."  *Malibu Media, LLC v. John Does 1-23*, No. 5:12-CV-04442, 2013 WL 1389763, at *2 (E.D. Pa. Apr. 3, 2013).

Defendants have failed to substantiate any claim of burden notwithstanding that it has been more than one year since the first constituent case was filed.  The single fact Defendants cite, that there are 23.1 million sessions in a 30-day period, lacks any essential context.  Defendants have failed to define the volume of session data in terms of gigabytes or terabytes, nor have they identified ***any*** cost associated with production.

Plaintiffs proposed an eminently reasonable alternative – to provide read-only access to QM's platform – which would eliminate the burden of production on all parties.  Unlike other databases that intermingle relevant and non-relevant data, because QM is a session replay provider and its platform contains recordings of communications intercepted from Defendants' websites, the data accessible through QM's platform should contain only responsive data, none of which is privileged.  Providing Plaintiffs with read-only access ensures the parties are on equal footing without compromising the operative scheduling order.  *Qualcomm Inc. v. Broadcom Corp.*, No. 05CV1392-B, 2007 WL 935617, at *4–5 (S.D. Cal. Mar. 13, 2007).

## CONCLUSION

For the reasons stated herein, the Court should compel production of documents responsive to Request No. 7.

Date: November 7, 2023

By: */s/ Nicholas A. Colella*
Nicholas A. Colella (PA Bar # 332699)
Gary F. Lynch (PA Bar # 56887)
Kelly K. Iverson (PA Bar # 307175)
Jamisen Etzel (PA Bar # 311514)
Elizabeth Pollock-Avery (PA Bar # 314841)
Patrick Donathen (PA Bar # 330416)
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: (412) 322-9243
NickC@lcllp.com
Gary@lcllp.com
Kelly@lcllp.com
Jamisen@lcllp.com
Elizabeth@lcllp.com
Patrick@lcllp.com

Kate M. Baxter-Kauf
Karen Hanson Riebel
Maureen Kane Berg
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
kmbaxter-kauf@locklaw.com
khriebel@locklaw.com
mkberg@locklaw.com

Katrina Carroll
**LYNCH CARPENTER, LLP**
111 W. Washington St. Suite 1240
Chicago IL 60602
Tel: (312) 750-1265
katrina@lcllp.com

Joseph H. Kanee
**MARCUS & ZELMAN LLC**
701 Brickell Avenue, Suite 1550
Miami, FL 33131
Tel: (786) 369-1122
joseph@marcuszelman.com

Ari H. Marcus (PA Bar # 322283)
**MARCUS & ZELMAN LLC**
701 Cookman Avenue, Suite 300

Asbury Park, NJ 07712
Tel: (732) 695-3282
ari@marcuszelman.com

*Plaintiffs' Co-Lead and Liaison Counsel*

Carey Alexander
**SCOTT & SCOTT**
**ATTORNEYS AT LAW LLP**
230 Park Avenue
Ste 17th Floor
New York, NY 10169
Tel: (212) 223-6444
calexander@scott-scott.com

MaryBeth V. Gibson
**THE FINLEY FIRM, P.C.**
3535 Piedmont Rd.
Building 14, Suite 230
Atlanta, GA 30305
Tel: (404) 978-6971
mgibson@thefinleyfirm.com

Steven M. Nathan
**HAUSFELD LLP**
33 Whitehall Street Fourteenth Floor
New York, NY 10004
Tel: (646) 357-1100
snathan@hausfeld.com

James J. Pizzirusso (Md. Bar No. 20817)
**HAUSFELD LLP**
888 16th Street N.W. Suite 300 Washington, D.C.
20006
(202) 540-7200
jpizzirusso@hausfeld.com

*Plaintiffs' Steering Committee*

## LOCAL RULE 26.1(F) CERTIFICATION

Pursuant to Local Rule 26.1(f), Plaintiffs certify that the parties, after reasonable effort, are unable to resolve the dispute.  The parties met and conferred on October 30, 2023, and November 2, 2023 for approximately one hour per conference. The parties further exchanged substantive email correspondence regarding the dispute on October 26, 2023, October 31, 2023, November 1, 2023, and November 6, 2023.  The parties' correspondence has addressed substantive factual information regarding the session data maintained by Defendants and QM. Defendants have confirmed that they are standing on each of their objections and that their reasons for doing so are set forth in their objections.

 /s/ Nicholas A. Colella
Nicholas A. Colella