# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In Re: BPS DIRECT LLC, AND CAEBELA'S LLC, WIRETAPPING LITIGATION | MDL NO. 3074<br><br>PLAINTIFFS' FIRST SET OF DISCOVERY REQUESTS TO DEFENDANTS |

**PLAINTIFFS' FIRST SET OF DISCOVERY REQUESTS TO DEFENDANTS**

Plaintiffs, by and through counsel and Rules 33, 34, and 36 of the Federal Rules of Civil Procedure, propounds the following discovery to Defendants BPS Direct, LLC, d/b/a Bass Pro Shops ("BPS") and Cabela's LLC ("Cabela's"). The Interrogatories, Requests for Production of Documents, and Request for Admissions must be answered separately and fully, in writing and under oath if applicable. As required by the Federal Rules of Civil Procedure, discovery must be answered and produced within thirty (30) days after service thereof.

*SECTION I*
**INSTRUCTIONS**

(1)   Restate each Interrogatory, Request for Production of Documents, and Request for Admissions in full immediately above your response.

(2)   In answering these discovery requests, you shall furnish all information available to you at the time of your answers and shall timely supplement your answers if you learn of additional responsive facts.

(3)   Answer each discovery request fully, providing all information actually or constructively available to you collectively and/or individually, or any other persons or entities that you know to possess or have access to the requested information.

(4)   If you fail to answer any discovery request in accordance with these instructions, specifically state the reason(s).

(5)   If you interpose any objection to any discovery request, fully state the grounds for the objection and the legal authority upon which you would rely in response to a Motion to Compel.

(6)   With respect to each document otherwise called for by this discovery, as to which you assert a claim of privilege, or the applicability of the work product doctrine, state separately the following, in addition to the information otherwise requested:

   (A)   The type of document(s);

   (B)  Its date;
   (C)  The name, business address, and present position of its author(s);
   (D)  The business affiliation and position of its author(s) at the time of preparation of the document;
   (E)  The name, business address, and present position of its addressee and all other recipients of the document;
   (F)  The business affiliation and position of its addressee and all other recipients at the time of receipt of the document;
   (G)  A general description of the subject matter of the document;
   (H)  The basis of the claim of privilege; *and*
   (I)  The facts and law upon which you will rely in support of that contention in response to a Motion to Compel.

(7) For every Request for Production, to the extent that a responsive "document" or any type of responsive materials of any type existed at some point in time, but no longer exists, please identify such "documents" or such responsive materials.

(8) If your objection is based upon the work product doctrine, set forth the following information:

   (A)  Whether the requested information or document(s) exists and the general nature of such items (e.g. recording, video, etc.);
   (B)  The identity of the individual(s) in possession of the requested information or document(s);
   (C)  The date the requested information or items were created and the date same was obtained by you.

(9) You are requested to produce all Documents and ESI in Your possession, custody, or control – as well as Documents and ESI that are in the possession of Your partners, officers, employees, attorneys, accountants, representatives, or agents, or that are otherwise subject to Your custody or control – that are described below.

(10) Unless otherwise indicated, the Documents and ESI to be produced include all Documents and ESI prepared, sent, dated or received, or those that otherwise came into existence at any point in time.

(11) The production by one person, party, or entity of a Document or item of ESI does not relieve another person, party, or entity from the obligation to produce his, her, or its own copy of that Document or ESI, even if the two are identical.

(12) In producing Documents and ESI, You are requested to produce a copy of each original Document and ESI together with a copy of all non-identical copies and drafts of that Document. If the original of any Document and ESI cannot be located, a copy shall be provided in lieu thereof, and shall be legible and bound or stapled in the same manner as the original.

(13) Documents and ESI shall be produced as they are kept in the usual course of business. All

        Documents and ESI shall be produced with a copy of the file folder, envelope, or other container in which the Documents and ESI are kept or maintained. All Documents and ESI shall be produced intact in their original files, without disturbing the organization of Documents and ESI employed during the conduct of the ordinary course of business and during the subsequent maintenance of the Documents and ESI.

(14)    Documents and ESI not otherwise responsive to this discovery request shall be produced if such Documents and ESI mention, discuss, refer to, or explain the Documents and ESI which are called for by this discovery request, or if such Documents and ESI are attached to Documents and ESI called for by this discovery request and constitute routing slips, transmittal memoranda, or letters, comments, evaluations or similar materials.

(15)    Each Document and item of ESI requested herein is requested to be produced in its entirety and without deletion or excisions, regardless of whether You consider the entire Document or item of ESI to be relevant or responsive to this request. If You have redacted any portion of a Document or item of ESI, stamp the word "redacted" on each page of the Document or item of ESI that You have redacted.

(16)    Notwithstanding a claim that a Document or item of ESI is protected from disclosure, any Document or item of ESI so withheld must be produced with the portion claimed to be protected redacted.

(17)    Every Request for Production herein shall be deemed a continuing discovery request, and You are to supplement information which adds to or is in any way inconsistent with Your initial answers to these Requests.

(18)    Plaintiffs reserve the right to propound additional discovery requests.

## SECTION II
## DEFINITIONS

(1)    **"Action"** means the above captioned case, In Re: BPS DIRECT LLC, AND CABELA'S LLC, WIRETAPPING LITIGATION, MDL No. 3074 (W.D. Pa.).

(2)    **"Architecture"** refers to each piece of infrastructure – including but not limited to source code, Javascript code, software, applications, web crawlers, hardware, servers, and networks – utilized to operate, implement or otherwise facilitate the operation of Your Websites.

(3)    **"Class"** means the classes and subclasses as defined in the Consolidated Class Action Complaint.

(4)    "**Class Members**" shall mean all persons who visited Your Websites and whose visit(s) were Recorded. For purposes of identifying the geographic location of a Class Member, You may rely on an internet protocol address and/or geolocation indicator associated

3

with a visit to Your Websites that reflects a state as the originating source of the visit.

(5) **"Communication"** means the conveyance (in the form of facts, ideas, thoughts, opinions, data, inquiries or otherwise) of information and includes, without limitation, correspondence, memoranda, reports, presentations, face-to-face conversations, telephone conversations, text messages, instant messages, voice messages, negotiations, agreements, inquiries, understandings, meetings, letters, notes, telegrams, mail, email, and postings of any type.

(6) **"Concerning"** means relating to, regarding, concerning, referring to, describing, evidencing, evincing, or constituting.

(7) **"Data Recording(s)"** shall mean, as applicable, the data copied, collected, stored, intercepted, captured, read, re-routed, forwarded, redirected, and/or received as a result of Recording a visit to Your Websites.

(8) "**Document**" shall include any written or graphic matter or any other means of preserving thought or expression, and all tangible things from which information can be processed or transcribed in your actual or constructive possession, custody, care or control, which pertain directly or indirectly, in whole or in part, either to any of the subjects listed below or to any other matter relevant to the issues in this action, or which are themselves listed below as specific documents, including, but not limited to: correspondence, memoranda, notes, messages, letters, telegrams, teletype messages, bulletins, diaries, chronological data, minutes, books, reports, charts, ledgers, invoices, worksheets, receipts, computer printouts, computer disks, electronic mail (e-mail), schedules, affidavits, contracts, transcripts, surveys, graphic representation of any kind, photographs, graphs, microfilms, videotapes, tape recordings, electronically stored material, motion pictures or other films. Further, the word "Documents" shall be deemed to include the original and any draft thereof, and any copy of an original or a draft which differs in any respect from such original or draft.

(9) **"Electronic Media"** means any magnetic, optical, or other storage media device used to record or access ESI including, without limitation, computer memory, hard disks, floppy disks, flash memory devices, CDs, DVDs, Blu-ray disks, cloud storage (e.g., DropBox, Box, OneDrive, and SharePoint), tablet computers (e.g., iPad, Kindle, Nook, and Samsung Galaxy), cellular or smart phones (e.g., BlackBerry, iPhone, Samsung Galaxy), personal digital assistants, magnetic tapes of all types or any other means for digital storage and/or transmittal.

(10) **"ESI"** or **"Electronically Stored Information"** refers to information and Documents – with all Metadata intact – created, manipulated, communicated, stored, and best utilized in digital form, and requiring the use of Electronic Media to access. Such information includes emails, email attachments, message boards, forums, support tickets, support articles, security alerts, pop-ups, videos, discussion boards, data, charts, BETA results, error messages, bug reports, source code, investigative reports, monitoring reports, comments, press releases, drafts, models, templates, websites, instant messages, chats, and

4

        intercompany and intra- company Communications.

(11)   "**Identify**" means, with respect to any "person," or any reference to the "identity" of any "person," to provide the name, home address, telephone number, business name, business address, business telephone number and a description of each such person's connection with the events in question.

(12)   "**Identify**" means, with respect to any "document," or any reference to stating the "identification" of any "document" provide the title and date of each such document, the name and address of the party or parties responsible for the preparation of each such document, the name and address of the party who requested or required the preparation and on whose behalf it was prepared, the name and address of the recipient or recipients to each such document and the present location of any and all copies of each such document, and the names and addresses of any and all persons who have custody or control of each such document or copies thereof.

(13)   **"Including"** means "including but not limited to" and "including without limitation."

(14)   **"Metadata"** refers to structured information about an electronic file that is embedded in the file, describing the characteristics, origins, usage and validity the electronic file.

(15)   "**Person**" shall mean any natural person, entity, corporation, partnership, association, joint venture, trust, government unit, agency, branch, or office or any subdivision or department thereof.

(16)   "**Plaintiffs**" shall mean the named Plaintiffs in this action.

(17)   "**Record**," "**Recorded**," or "**Recording**" shall mean, as applicable, to enable, run, activate, and/or operate computer script code on Your Websites, that was provided by any Session Replay Provider, to copy, record, intercept, capture, read, observe, re-route, forward, redirect, and/or receive data associated with, but not limited to, any of the following activities by a visitor to Your Websites: scrolling behavior, mouse movements, mouse clicks, content of the pages viewed, information inputted, pages viewed, search queries, and/or keystrokes.

(18)   **"Relate(s) to"** "**Related to"** or **"Relating to"** shall be construed to mean referring to, reflecting, concerning, pertaining to or in any manner being connected with the matter discussed.

(19)   "**Session Replay(s)**" shall mean the browsing session and/or playback generated as a result of Recording a visit to Your Websites.

(20)   "**Session Replay Provider**" shall mean any of the following entities: AB Tasty, Auryc, Browsee, Capturly, Clicktale, Contentsquare, Crazy Egg, Cux.io, Datadog, DecibelInsight a/k/a Decibel, Dynatrace, FullStory, Glassbox Digital, Heap, Heyflow, Hotjar, Inspectlet, LiveSession, LogRocket, Lucky Orange, Microsoft Clarity, Mouseflow, Mousestats,

4862-4518-4887, v. 3

(21)    Plerdy, Quantum Metric, Reactflow, Salemove, SessionCam, Smartlook, TrackMyUsers, UserTrack, UserReplay, UserZoom, Verint Foresee, VWO Insights, Yandex, or any other entity offering services substantially similar to that offered by the named entities.

(21)    "**You**" or "**Your**" shall mean BPS Direct LLC, and Cabela's LLC, the Defendants in this case, including any of Your directors, officers, employees, partners, members, representatives, agents (including attorneys, accountants, consultants, investment advisors or bankers), and any other person purporting to act on Your behalf. In the case of business entities, these defined terms include parents, subsidiaries, affiliates, predecessor entities, successor entities, divisions, departments, groups, acquired entities and/or related entities or any other entity acting or purporting to act on its behalf.

(22)    "**Websites**" shall mean the following websites: www.basspro.com and www.cabelas.com.

## SECTION III
## RELEVANT TIME PERIOD

Unless otherwise specified, the relevant time period for these discovery requests is five (5) years prior to the filing of the first action consolidated herein (October 14, 2022) to present.

[*Remainder of page left blank intentionally*]

6

## SECTION IV
## **INTERROGATORIES**

(1)     Identify the total number of visitors to Your Websites from each state in the United States, based on the internet protocol numbers reflecting that state as the location that was Recorded. Your response should reflect the total number of instances of Recording per year and month. For associated Data Recording, please identify the date, length of time of recording activity, data captured, associated internet protocol number and geographic location, and the visitor's internet service provider.

    ANSWER:

(2)     Identify the total number of Session Replays that were created of visitors to Your Websites from each state in the United States, based on the internet protocol numbers reflecting that state as the location during the relevant time period. For each Session Replay, please identify the date, length of time of recording activity, data captured, associated internet protocol number and geographic location, and internet service provider.

    ANSWER:

(3)     Identify all individuals who were involved in, and/or were part of, the decision to Record visits to Your Websites and/or the decision to obtain services from a Session Replay Provider.

    ANSWER:

(4)     Identify and describe any policies, procedures, or practices followed or maintained by You, including identification of any written materials or documents outlining any such policies or procedures, with respect to the following: (a) Recording visits to Your Websites; (b) the redaction of personal identifying and/or private information contained within a Data Recording and/or Session Replay; and (c) the manner or method of storing, archiving, or otherwise maintaining and/or disposing of Data Recordings and Session Replays.

    ANSWER:

(5)     Identify the date(s) during which JavaScript code from any Session Replay Provider(s) was added to Your Websites, indicating the name of the Session Replay Provider and dates during which the code was added, active, enabled, operating, and/or running on Your Websites, as well as any pages of Your Websites for which the code was explicitly excluded.

    ANSWER:

(6)     Identify all dates on which You Recorded Plaintiffs' visit(s) to Your Websites, as well as any Data Recordings and/or Session Replays generated as a result of Recording Plaintiffs.

ANSWER:

(7) Describe the consent or permission, if any, You obtained from Plaintiffs and/or the Class Members to Record their visits to Your Websites.

ANSWER:

(8) Describe in detail the method or process, including all relevant Architecture, by which visits to Your Websites are Recorded.

ANSWER:

(9) Identify all third parties with whom You and/or Your Session Replay Provider(s) received from, shared, provided, or sold access to Data Recordings and/or Session Replays.

ANSWER:

(10) Identify all vendors, third-parties, and/or contractors that were involved or participated in Recording visits to Your Websites during the Relevant Time Period.

ANSWER:

(11) Describe the facts you contend support any defense(s) you may raise to the claims asserted against you in this lawsuit.

ANSWER:

## SECTION V
## REQUESTS FOR PRODUCTION OF DOCUMENTS

**Please produce –**

(1) Every insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment against you in this action or to indemnify you or reimburse you for payments made to satisfy the judgment, irrespective of whether you have or intend to make such a claim, and every insurance application completed by you, whether or not related to an insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment against you in this action or to indemnify you or reimburse you for payments made to satisfy the judgment.

(2) The Declarations pages for all insurance agreements identified in Section D of Defendants' Initial Disclosures.

(3) Documents and ESI, including organizational charts, sufficient to identify all Persons who may possess knowledge relevant to this Action.

(4) Documents and ESI sufficient to identify all databases, networks, or any other repositories of information under Your control that may contain Documents and ESI relevant to this Action.

(5) Documents and ESI sufficient to identify all methods and media utilized by Your employees for inter-office (internal) Communication in the course of their work, including but not limited to inter-office mail (electronic and physical), reports (electronic and physical), chats, telephone use and voice mail, text messaging, and video chats, as well as how and where such Communications are stored.

(6) All Documents and ESI sufficient to identify each process and/or piece of Architecture involved in Recording visits to Your Websites, including documents sufficient to illustrate the flow of data from website visitor to any final storage server and/or cloud service.

(7) All Session Replays related to Plaintiffs and the Class Members.

(8) All Data Recordings related to Plaintiffs and the Class Members.

(9) Documents and ESI sufficient to identify the total number of members in each Subclass and in the National Class.

(10) Documents and ESI sufficient to identify the total number of Session Replays related to each Subclass and the National Class Members.

(11) Documents and ESI sufficient to identify the total number of Recordings related to each Subclass and the National Class Members.

9

(12)   Documents and ESI sufficient to identify the total number of instances in which Subclass and National Class Members were Recorded.

(13)   Documents and ESI sufficient to identify the following for each Class Member: (a) their internet protocol address; (b) their geographic location; (c) their internet service provider; and (d) the dates on which they were Recorded by You.

(14)   All Communications between You and any Session Replay Provider regarding Recording visits to Your Websites and/or this lawsuit.

(15)   Copies of all JavaScript code from any Session Replay Provider used on Your Websites at any point in time.

(16)   Documents and ESI sufficient to identify the dates during which any JavaScript code from any Session Replay Provider was active, enabled, and/or operating in Your Websites.

(17)   Documents and ESI sufficient to identify any consent, permission, and/or authorization You claim to have received from Plaintiffs to Record their visits to Your Websites.

(18)   Documents and ESI sufficient to identify any consent, permission, and/or authorization You claim to have received from Class Members to Record their visits to Your Websites.

(19)   All Documents and ESI describing and/or containing the names, descriptions, and identifying features of any documents, files, or Communications created and/or maintained in connection with the Recording of Plaintiffs' visits to Your Websites.

(20)   All Documents and ESI describing and/or containing the names, descriptions, or identifying features of any files created and/or maintained in connection with the Recording of the Class Members' visits to Your Websites.

(21)   All contracts and agreements between You and any Session Replay Provider.

(22)   All Documents and ESI concerning or identifying Plaintiffs.

(23)   All internal Communications, documents, and/or ESI regarding or discussing Recording visits to Your Websites.

(24)   Documents and ESI sufficient to identify the Session Replays of any Class Member that were scrubbed or deleted from any of Your databases or databases to which You have access.

(25)   Documents and ESI sufficient to identify any Session Replays of Plaintiffs that were scrubbed or deleted from any database.

(26)   All Documents and ESI concerning any agreement, whether formal or informal, between You and any third party, regarding Recording of visitors to Your Websites, including, but

not limited to, those concerning the sale of Data Recordings and/or Session Replays.

(27) All Communications between You and any third party regarding or discussing Recording of visitors to Your Websites.

(28) All internal memos or Communications regarding or discussing the Recording of visitors to Your Websites.

(29) All policies and procedures regarding or discussing the Recording of visitors to Your Websites.

(30) Documents and ESI sufficient to describe the process of Recording visits to Your Websites.

(31) Documents and ESI sufficient to identify all individuals that were involved and/or were part of the decision to Record visits to Your Websites.

(32) Documents and ESI sufficient to identify any mechanism for opting out of being Recorded, if any, that was available to Plaintiffs and/or the Class Members.

(33) All Documents and ESI regarding any investigation and/or complaint regarding the Recording of visitors to Your Websites of which you are aware.

(34) All Documents and ESI regarding Your providing access to, or copies of, Data Recordings and/or Session Replays to any third party, including the scope of such access.

(35) Documents and ESI sufficient to identify the purposes for which You use Data Recordings and/or Session Replays.

(36) All Documents and ESI regarding the use of Data Recordings and/or Session Replays by any third parties for any purpose.

(37) All Documents and ESI related to Your Privacy Policy, including any changes or modifications to Your Privacy Policy and practices concerning your Privacy Policy.

(38) All Documents and ESI that You contend evidence or substantiate Your defenses in this Action.

(39) All Documents and ESI related to Your policies, practices, or procedures, if any, regarding the retention or destruction of Documents, files, and ESI, including emails, email backup or archive tapes, hard drives, and corporate storage, including, without limitation, any changes or modifications in such policies or practices.

(40) All Documents and ESI related to Your policies, practices, or procedures, if any, regarding the retention or destruction of Data Recordings and/or Session Replays.

11

(41) For any JavaScript code and/or source code related to any of these Requests, Documents and ESI sufficient to identify all code repositories for such source code.

(42) Documents such as "data libraries" sufficient to explain the meaning of any data You produce in response to these requests.

(43) All analytic data, including Google Analytics data and Meta Pixel data, associated with Plaintiffs and the Class Members.

(44) Documents that identify how You assess the value of the Data Recordings and/or Session Replays.

(45) Documents that identify how You use the Data Recordings and/or Session Replays in the course of Your business.

(46) Documents that identify how much revenue You derive from the Data Recordings and/or Session Replays of Plaintiffs' and Class Members' visits to Your Websites.

(47) Documents that identify the revenue derived by Session Replay Providers with whom you contract from the Data Recordings and/or Session Replays of Plaintiffs' and Class Members' visits to Your Websites.

(48) Documents that identify how the Session Replay Providers with whom you contract use the Data Recordings and/or Session Replays in the course of their business.

(49) Produce the following documents that Defendants identified in Section B of their Initial Disclosures:

(a) Privacy policies and Terms of Use on the cabelas.com and basspro.com Websites during the relevant time period.

(b) Documents pertaining to the implementation of the session replay code and the configuration, duration, scope and purpose of the session replay code on basspro.com and cabelas.com during the relevant time period.

(c) Any documents that demonstrate the activities of any of the Plaintiffs or Class Members while on the basspro.com and cabelas.com Websites.

(d) Any materials that demonstrate that Plaintiffs consented to the privacy policies and/or terms of use on the cabelas.com and basspro.com Websites during the relevant time period.

[*Remainder of page left blank intentionally*]

4862-4518-4887, v. 3

## SECTION VI
## REQUEST FOR ADMISSIONS

**Admit or deny the following –**

(1)　Admit that You did not obtain consent from Plaintiffs to Record any visit to Your Websites.

(2)　Admit that at least one of each of Plaintiffs' visits to Your Websites was Recorded.

(3)　Admit You never alerted Plaintiffs that their visit(s) to Your Websites would be Recorded.

(4)　Admit You did not obtain consent from any Class Member to Record their visits to Your Websites.

(5)　Admit You never alerted any Class Member that their visit(s) to Your Websites would be Recorded.

(6)　Admit that You did not provide Plaintiffs or any Class Members with a way to opt out of the Recording of their visits to Your Websites.

(7)　Admit that visitors to Your Websites were Recorded from October 14, 2017, to the date of the filing of the first action consolidated in this MDL proceeding.

(8)　Admit that visitors to Your Websites were Recorded from January 1, 2018, to the date of the filing of the first action consolidated in this MDL proceeding.

(9)　Admit that visitors to Your Websites were Recorded from January 1, 2019, to the date of the filing of the first action consolidated in this MDL proceeding.

(10)　Admit that visitors to Your Websites were Recorded from January 1, 2020, to the date of the filing of the first action consolidated in this MDL proceeding.

(11)　Admit that visitors to Your Websites were Recorded from January 1, 2021, to the date of the filing of the first action consolidated in this MDL proceeding.

(12)　Admit that visitors to Your Websites were Recorded from January 1, 2022, to the date of the filing of the first action consolidated in this MDL proceeding.

(13)　Admit that there are more than 40 Class Members.

(14)　Admit that You are able to identify the geographic location of the visitor associated with each Session Replay.

(15)　Admit that You are able to identify the geographic location of the visitor associated with each Data Recording.

(16) Admit that You are able to identify the internet protocol address for the visitor associated with each Data Recording.

(17) Admit that You are able to identify the internet protocol address for the visitor associated with each Session Replay.

(18) Admit that each visitor to Your Websites who was Recorded was assigned a unique identification number and/or other identifier.

(19) Admit JavaScript code from a Session Replay Provider was installed on Your Websites prior to the filing of this lawsuit.

(20) Admit that the JavaScript code provided by any Session Replay Provider was not integral or necessary to the normal operation of Your Websites.

(21) Admit that the Session Replay JavaScript code installed on Your Websites allowed You to capture, read, re-rout, forward, redirect and/or receive a copy of the data exchanged between visitors to Your Websites and Your Websites.

(22) Admit that the Session Replay JavaScript code installed on Your Websites allowed Your Session Replay Provider(s) to capture, read, re-rout, forward, redirect and/or receive a copy of the data exchanged between visitors to Your Websites and Your Websites

(23) Admit that the Session Replay JavaScript code installed on Your Websites allowed intercepted data exchanged between visitors to Your Websites and Your Websites.

(24) Admit that the Session Replay JavaScript code installed on Your Websites allowed You and/or your Session Replay Provider(s) to re-create an individual's visit and navigation through Your Websites.

(25) Admit that the Session Replay JavaScript code installed on Your Websites permitted the observation, in real-time, of the scrolling behavior, mouse movements, mouse clicks, content of the pages viewed, information inputted, and/or keystrokes by a visitor to Your Websites.

(26) Admit that a Data Recording and/or Session Replay allows You to determine the actions taken by a visitor to Your Websites.

(27) Admit that a Data Recording and/or Session Replay allows You to determine the mouse movements by a visitor to Your Websites.

(28) Admit that a Data Recording and/or Session Replay allows You to determine the mouse clicks by a visitor to Your Websites.

(29) Admit that a Data Recording and/or Session Replay allows You to determine the pages

14

viewed by a visitor to Your Websites.

(30) Admit that a Data Recording and/or Session Replay allows You to determine the information inputted by a visitor to Your Websites.

(31) Admit that a Data Recording and/or Session Replay allows You to determine the information inputted, including information inputted and then deleted, or never formally submitted to You, by a visitor to Your Websites.

(32) Admit that a Data Recording and/or Session Replay allows You to determine the keystrokes by a visitor to Your Websites.

(33) Admit that prior to the filing of this lawsuit, Your Websites did not disclose that You would be Recording visitors to the site.

(34) Admit that You were able to determine the geographic location of a visitor to Your Websites before and/or during the Recording of their visit to Your Websites.

(35) Admit that Plaintiffs and Class members did not consent to You sharing their personal information for any purpose.

(36) Admit that You shared categories of personal information of Plaintiffs and Class Members for behavioral, cross context and targeted advertising.

(37) Admit that You were aware of the Federal Wiretap Act, 18 U.S.C § 2510, *et. seq.*, prior to Recording visitors on Your Websites.

(38) Admit that You were aware of the Computer Fraud and Abuse Act 18 U.S.C § 1030, *et. seq.*, prior to Recording visitors on Your Websites.

(39) Admit that You were aware of the California Invasion of Privacy Act, California Penal Code § 630, *et seq.*, prior to Recording visitors on Your Websites.

(40) Admit that You were aware of the Maryland Wiretapping and Electronic Surveillance Act, Md. Code Ann., Cts. & Jud. Proc. § 10-401, *et seq.* prior to Recording visitors on Your Websites.

(41) Admit that You were aware of the Massachusetts Wiretapping Statute, Mass. Gen. Laws ch. 272 § 99(Q), *et seq.*, prior to Recording visitors on Your Websites.

(42) Admit that You were aware of the Missouri Wiretap Act, Mo. Ann. Stat. §§ 542.400, *et seq.*, prior to Recording visitors on Your Websites.

(43) Admit that You were aware of the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. § 5701, *et seq,*. prior to Recording visitors on Your Websites.

4862-4518-4887, v. 3

## **VERIFICATION**

Under penalties of perjury, I, the undersigned affiant, declare that I have read the foregoing Answers to Interrogatories, and that the Answers are true and correct.

_____
AFFIANT SIGNATURE

_____
PRINTED NAME OF AFFIANT

_____
CAPACITY / TITLE OF AFFIANT

**BEFORE ME**, the undersigned authority, personally appeared _____, who produced as identification _____, bearing number _____ expiring on _____ who did take an oath, who stated that he/she is the person noted above, and that, according to his/her best knowledge and belief, the forgoing answers are true and correct.

Sworn to and subscribed before me, this _____ day of _____, 202\_\_\_\_\_.

_____
SIGNATURE OF NOTARY

_____
PRINTED NAME OF NOTARY

4862-4518-4887, v. 3

| | |
|---|---|
| Date: <u>August 14, 2023</u> | By: <u>/s/         Kate M. Baxter-Kauf</u><br>Kate M. Baxter-Kauf<br>Karen Hanson Riebel<br>Maureen Kane Berg<br>**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**<br>100 Washington Avenue South, Suite 2200<br>Minneapolis, MN 55401<br>Tel: (612) 339-6900<br>kmbaxter-kauf@locklaw.com<br>khriebel@locklaw.com<br>mkberg@locklaw.com<br><br>Nicholas A. Colella (PA Bar # 332699)<br>Gary F. Lynch (PA Bar # 56887)<br>Kelly K. Iverson (PA Bar # 307175)<br>Jamisen Etzel (PA Bar # 311514)<br>Elizabeth Pollock-Avery (PA Bar # 314841)<br>Patrick Donathen (PA Bar # 330416)<br>**LYNCH CARPENTER, LLP**<br>1133 Penn Avenue, 5th Floor<br>Pittsburgh, PA 15222<br>Tel: (412) 322-9243<br>NickC@lcllp.com<br>Gary@lcllp.com<br>Kelly@lcllp.com<br>Jamisen@lcllp.com<br>Elizabeth@lcllp.com<br>Patrick@lcllp.com<br><br>Katrina Carroll<br>**LYNCH CARPENTER, LLP**<br>111 W. Washington St. Suite 1240<br>Chicago IL 60602<br>Tel: (312) 750-1265<br>katrina@lcllp.com<br><br>Joseph H. Kanee<br>**MARCUS & ZELMAN LLC**<br>701 Brickell Avenue, Suite 1550<br>Miami, FL 33131<br>Tel: (786) 369-1122<br>joseph@marcuszelman.com<br><br>Ari H. Marcus (PA Bar # 322283)<br>**MARCUS & ZELMAN LLC**<br>701 Cookman Avenue, Suite 300 |

17

Asbury Park, NJ 07712
Tel: (732) 695-3282
ari@marcuszelman.com
*Plaintiffs' Co-Lead and Liaison Counsel*

Carey Alexander
**SCOTT & SCOTT, ATTORNEYS AT LAW, LLP**
230 Park Avenue
Ste 17th Floor
New York, NY 10169
Tel: (212) 223-6444
calexander@scott-scott.com

MaryBeth V. Gibson
**THE FINLEY FIRM, P.C.**
3535 Piedmont Rd.
Building 14, Suite 230
Atlanta, GA 30305
Tel: (404) 978-6971
mgibson@thefinleyfirm.com

Steven M. Nathan
**HAUSFELD LLP**
33 Whitehall Street Fourteenth Floor
New York, NY 10004
Tel: (646) 357-1100
snathan@hausfeld.com

James J. Pizzirusso (Md. Bar No. 20817)
**HAUSFELD LLP**
888 16th Street N.W. Suite 300 Washington, D.C. 20006
(202) 540-7200
jpizzirusso@hausfeld.com
*Plaintiffs' Steering Committee*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was served via email on counsel for Defendants pursuant to the agreement entered into by the parties on July 6, 2023 (ECF No. 42).

Date: <u>August 14, 2023</u>　　　　　　By: <u>/s/        *Kate M. Baxter-Kauf*    </u>

4862-4518-4887, v. 3