# EXHIBIT 6

## Re: SERVICE OF COURT DOCUMENT(S) – CASE NO. MDL 3074 – In Re: BPS Direct, LLC and Cabela's LLC Wiretapping Litigation

Carey Alexander <calexander@scott-scott.com>
Mon 11/6/2023 7:42 AM
To:McLoone, Jennifer (SHB) <JMCLOONE@shb.com>;Kate M. Baxter-Kauf <kmbaxter-kauf@locklaw.com>;Joseph Kanee <joseph@marcuszelman.com>
Cc:Izquierdo, Belkys (SHB) <BIZQUIERDO@shb.com>;Searle, Maveric (SHB) <msearle@shb.com>;Nicholas Colella <NickC@lcllp.com>;Patrick Donathen <Patrick@lcllp.com>

Counsel,

Thank you for meeting and conferring with us on Thursday. I write to memorialize our conversation and to follow-up regarding our outstanding requests.

We have confirmed receipt of the session metadata associated with the Plaintiffs. We are still awaiting production of the session replay data associated with the Plaintiffs, which we requested during last Monday's meet and confer.

We understand that the session metadata is distinct from and broader than the session replay data and that producing session metadata would require what was characterized as a simple export to delimited file such as a .csv file or an Excel file. We understand that Defendants have yet to investigate the burden associated with exporting session metadata but that it is refusing to produce classwide session metadata for the same reasons as regards to session replay data. Defendants confirmed that they would produce any session metadata associated with session replay data that is produced and that the two datasets can be linked by reference to field 0, id.

With regard to session replay data and .har files, to the extent that the data does not contain fields, we requested that Defendants provide information sufficient to understand how the data is structured including, for example, whether it contains key/value pairs, and how to properly interpret such data. Defendants confirmed that certain data is represented by codes and that Defendants will produce data sufficient to properly interpret those codes.

We understand that Defendants believe that "masked" data is not captured or stored, but that hashed data is captured and accessible with a decryption key. We understand that Quantum Metric encrypted and can access hashed data associated with IP addresses and that Defendants are investigating whether they have access to the decryption key. We understand that data associated with search terms is stored in the session replay data and accessible with a decryption key in Defendants' possession, and that for a period of time, such data was also accessible to Quantum Metric. We have asked Defendants to determine where hashed data is otherwise stored.

While we are still awaiting the production of session replay data, we have received no other information that would allow Plaintiffs to determine what other potential exemplar data might be appropriate, nor have we received any specific proposals from Defendants beyond its agreement to produce the single session replay Defendants have identified as associated with Plaintiff Moore.

We understand that Defendants have rejected Plaintiffs' proposal to alleviate the burden of production by providing Plaintiffs with read-only access to Quantum Metric's platform. Defendants confirmed that they are continuing to withhold consent to Quantum Metric's production of data responsive to Plaintiffs' subpoena on the basis of the confidentiality provision in Defendants' Enterprise Service Terms and Conditions with Quantum Metric and that the reason for doing so was Defendants' proportionality objection. Given that Quantum Metric has not interposed a proportionality or burden objection to producing responsive data and that Plaintiffs' expert reports addressing class certification issues are due in less than four months, Plaintiffs intend to file a motion as ordered asking the Court to overrule Defendants' objections and order the production of responsive session data.

---

**From:** "McLoone, Jennifer (SHB)" <JMCLOONE@shb.com>
**Date:** Thursday, November 2, 2023 at 6:35 PM
**To:** Carey Alexander <calexander@scott-scott.com>, Kate Baxter-Kauf <kmbaxter-kauf@locklaw.com>, Joseph Kanee <joseph@marcuszelman.com>
**Cc:** "Izquierdo, Belkys (SHB)" <BIZQUIERDO@shb.com>, "Searle, Maveric (SHB)" <msearle@shb.com>, Nicholas

Colella <NickC@lcllp.com>, Patrick Donathen <Patrick@lcllp.com>
**Subject:** RE: SERVICE OF COURT DOCUMENT(S) - CASE NO. MDL 3074 - In Re: BPS Direct, LLC and Cabela's LLC Wiretapping Litigation

Counsel, please see attached zip file.  An index is included but I also paste it here:

| Begin Bates Number | File Name | Confidentiality |
|---|---|---|
| BPS_0001232 | BPS-QM-js.pdf | Confidential |
| BPS_0001233 | qm-session-grid-fields.png | Confidential |
| BPS_0001234 | quantum-basspro-js.pdf | Confidential |
| BPS_0001235 | quantum-metric-export (cornell.heather).xlsx | Confidential |
| BPS_0001236 | quantum-metric-export (moore103).xlsx | Confidential |

If others require access to this, we can post it on a file-share site but wanted to get it to you directly in light of our conversations.  Can you please confirm receipt?

Thanks,

Jen

**Jennifer A. McLoone**
*Partner*
jmcloone@shb.com | 305-960-6937

**From:** Carey Alexander <calexander@scott-scott.com>
**Sent:** Thursday, November 2, 2023 12:02 AM
**To:** McLoone, Jennifer (SHB) <JMCLOONE@shb.com>; Kate M. Baxter-Kauf <kmbaxter-kauf@locklaw.com>; Joseph Kanee <joseph@marcuszelman.com>
**Cc:** Izquierdo, Belkys (SHB) <BIZQUIERDO@shb.com>; Searle, Maveric (SHB) <msearle@shb.com>; Nicholas Colella <NickC@lcllp.com>; Patrick Donathen <Patrick@lcllp.com>
**Subject:** Re: SERVICE OF COURT DOCUMENT(S) - CASE NO. MDL 3074 - In Re: BPS Direct, LLC and Cabela's LLC Wiretapping Litigation

**EXTERNAL**

Jennifer, thank you for your response. Let's meet and confer at 12:30 pm ET. I'll circulate dial-in information shortly.

**From:** McLoone, Jennifer (SHB) <JMCLOONE@shb.com>
**Date:** Wednesday, November 1, 2023 at 8:54 PM
**To:** Carey Alexander <calexander@scott-scott.com>, Kate M. Baxter-Kauf <kmbaxter-kauf@locklaw.com>, Joseph Kanee <joseph@marcuszelman.com>
**Cc:** Izquierdo, Belkys (SHB) <BIZQUIERDO@shb.com>, Searle, Maveric (SHB) <msearle@shb.com>, Nicholas Colella <NickC@lcllp.com>, Patrick Donathen <Patrick@lcllp.com>
**Subject:** RE: SERVICE OF COURT DOCUMENT(S) - CASE NO. MDL 3074 - In Re: BPS Direct, LLC and Cabela's LLC Wiretapping Litigation

Hi again Carey, I have interposed responses to your particular questions in red in the below.  Preliminarily though, we have a fundamental disagreement about proportionality and burden and absolutely had and continue to have a good faith basis for the objections asserted.  Nothing in Rule 26 requires us to define burden in gigabytes or terabytes.  This is particularly true where, as here, we have made clear that our client does not export session replays or session data from the QM system in the ordinary course of its business.  Our client views this information in number of sessions, not gigabytes or terabytes, because we do not have visibility into the size of an export of that data.  Moreover, defining proportionality by the number of sessions is appropriate here where any effort to correlate a session with a particular individual is done by Bass Pro/Cabela's on an individual, session by session basis.

Defendants do object to production of session replays from QM because production of replays of 353 million sessions (or even 23.1 million sessions referenced for the 30 day period preceding our discovery responses) is in no way proportional to the evidentiary value of that data in the case – which is minimal at best, particularly without the one-by-one decryption of session information to attempt to attribute that session to a particular individual.  That we are conferring now about a proportional production does not mean that our objections were made in bad faith or without support, or that we are not maintaining those objections as to a production of all replays.  The issue raised by your claims is what information QM has access to and how the law considers that information as it relates to your various claims.  Millions of replays or session metadata for millions of sessions is not needed to answer those questions.

See below for the further responses and we are available between 12-3 eastern to discuss tomorrow.  Please note that we are providing this information based on investigation by Defendants and discovery is still ongoing.


**Jennifer A. McLoone**
*Partner*
jmcloone@shb.com | 305-960-6937

---

**From:** Carey Alexander <calexander@scott-scott.com>
**Sent:** Tuesday, October 31, 2023 8:50 PM
**To:** McLoone, Jennifer (SHB) <JMCLOONE@shb.com>; Kate M. Baxter-Kauf <kmbaxter-kauf@locklaw.com>; Joseph Kanee <joseph@marcuszelman.com>
**Cc:** Izquierdo, Belkys (SHB) <BIZQUIERDO@shb.com>; Searle, Maveric (SHB) <msearle@shb.com>; Nicholas Colella <NickC@lcllp.com>; Patrick Donathen <Patrick@lcllp.com>
**Subject:** Re: SERVICE OF COURT DOCUMENT(S) - CASE NO. MDL 3074 - In Re: BPS Direct, LLC and Cabela's LLC Wiretapping Litigation


**EXTERNAL**

Counsel,

In our email from last Thursday and during our meet and confer, Plaintiffs requested information regarding the "size" of the responsive session replay data, beyond the mere number of sessions recorded. For example, as discussed during our meet and confer, telling us that that there are 23.1 million session replays says nothing about the size of that data, such as whether it is measured in gigabytes or terabytes. Nor does your response provide any additional information regarding the burden associated with production of data being maintained by Quantum Metric.

Notwithstanding that you were traveling at the end of last week, Rule 26(g) required you to have a factual basis for interposing objections regarding proportionality and burden prior to making them, beyond simply determining that a certain number of session replays were responsive to our requests.

Regardless, it is our understanding that Quantum Metric does not object to producing responsive session replay data on the basis of either proportionality or burden, but only because Defendants have refused to consent to the production of such data on the basis of provisions in Defendants' Enterprise Service Terms and Conditions with Quantum Metric. Please confirm whether Defendants are continuing to withhold such consent, and if so, the basis for Defendants' refusal.

In light of your email, we have several additional questions:

1.   Please identify the 43 fields associated with session metadata and any fields associated with session replay data. See attached excel which shows the session metadata fields.

2.   Please explain your understanding of the distinction between session replay data (which appears to be what you understand a .har file to contain) and session metadata (which appears to be excluded from the .har file). To the extent session metadata is distinct, please confirm that such information will be produced with any responsive session replay data.  The .har file is an HTTP archive file, which is a JSON-formatted format used to save HTTP performance and information about webpages that were loaded, response times and web browser information. After diligent efforts, Defendants are unable to export the .har file. We are working on an alternative method to get you visibility into a replay.  The session metadata exists in the database but is separate from the replay session.  We are able to extract the session metadata and produce that in an excel, with available metadata for the 43 fields. For

fields that are encrypted or not collected by the system, the metadata fields contain asterisks or will be blank. Replays have been preserved since November 2022 for purposes of this litigation; otherwise, replays were previously available within the ordinary course of business for a period of 30 days.  If a particular replay was viewed within that time, it remains in the system. Session metadata exists for sessions even if a replay does not.

3.   To the extent .har files "do not have fields associated with them," please explain how the data in the .har files is associated with a given field name.  See above. When a session is created, the system captures 43 fields of information about the session (what we are referring to as the session data or session metadata) and separately creates a replay which is the visual depiction of the session.  The 43 fields are stored in their own data tables.  The session replays are in a proprietary form in the system and cannot be exported as visual files; the description of the session can be exported as a .har file, but not by Defendants after diligent efforts. The sessions are not stored as .har files but that is the file type in which the descriptive data would be exported.

4.   Please explain the basis for your statement that whether a field is masked bears on the reliability of data contained within that field.  Masked information is not captured as a general matter.  With regard to IP address, the third and fourth octets are not visible in the ordinary course of business. Unlike other data, because of the nature of an IP address, the encryption here is done at the server side and this information, unlike other encrypted or withheld information, is available to QM to unlock with a separate decryption key.  However, because of the way it is encrypted, it is not a reliable search parameter.   Other data is hashed; that data is encrypted and can be seen by Defendants with an encryption key, but not by QM.

5.   Please confirm that Defendant has in its possession, custody, or control any decryption keys associated with masked data responsive to Request No. 7 and that Defendant will produce any information necessary to access masked data.  Defendant does not have decryption abilities for masked data as masked data is not captured (for example payment information), with the exception of IP address which is treated differently (explained above).  Defendant is able to decrypt hashed (encrypted) information (examples: name, address, email address, and for certain periods of time search terms) when using the system.  Quantum Metric is not.  To the extent that your claims center around information that Quantum Metric has access to, decryption is not relevant.  In order to associate a session with a particular individual though, decryption is necessary and associating session replays to a particular individual requires access by a BPS/Cabela's employee with a decryption key and is done on a session by session basis (which is why number of sessions is an appropriate measure for proportionality, as stated above). Hashed values appear as asterisks in the metadata and not as encrypted values, so no encryption key can open hashed data on the exported metadata files.

6.   With regard to Request No. 15, please explain your understanding of the distinction between the JavaScript "code" and JavaScript "script" so we can assess the sufficiency of your response. As discussed, we have asked for a Bates-stamped production of the responsive documents, which we believe Defendants are able to produce. The distinction I intended is that the code is live on the website, the script we have copied from the website and can and will produce, whether that be by pasting it into a document and bates numbering it or by pasting it into an interrogatory answer to give context to it.

Please provide the answers to these questions and produce any responsive session replay data associated with the Plaintiffs tomorrow and provide times on Thursday when you are available to meet and confer.

Thank you.



**Carey Alexander,** Partner
212.519.0512
calexander@scott-scott.com
www.scott-scott.com
The Helmsley Building + 230 Park Avenue, 17th Fl
New York, NY 10169

NEW YORK+LONDON+AMSTERDAM+BERLIN+CALIFORNIA+CONNECTICUT+VIRGINIA+OHIO+ARIZONA+TEXAS

This e-mail may contain confidential or privileged information. If you believe you have received it in error, please notify the sender immediately and delete this message without copying or disclosing it.

---

**From:** McLoone, Jennifer (SHB) <JMCLOONE@shb.com>
**Date:** Tuesday, October 31, 2023 at 7:49 PM
**To:** Kate M. Baxter-Kauf <kmbaxter-kauf@locklaw.com>, Joseph Kanee <joseph@marcuszelman.com>
**Cc:** Izquierdo, Belkys (SHB) <BIZQUIERDO@shb.com>, Searle, Maveric (SHB) <msearle@shb.com>, Nicholas Colella <NickC@lcllp.com>, Carey Alexander <calexander@scott-scott.com>, Patrick Donathen <Patrick@lcllp.com>
**Subject:** RE: SERVICE OF COURT DOCUMENT(S) - CASE NO. MDL 3074 - In Re: BPS Direct, LLC and Cabela's LLC Wiretapping Litigation

Thank you for the email address information.  To clarify following our conversation yesterday, the session data I mentioned having pertains to Plaintiff Irvin, not represented by you, so I apologize for that confusion.  When I was able to pull that information following the call, I realized that mistake.  To respond to Carey's email, we were able to identify email addresses for two of your plaintiffs via initial disclosures, but did not find any replays available for those individuals.  Nonetheless, we have now run searches based on all of the email addresses you have provided as associated with your plaintiffs.  Based on those searches, there is one session available for Plaintiff Moore, which we are working to extract as a .har file for production.  Beyond that replay, we have session metadata information available for sessions for Plaintiff Moore and Plaintiff Cornell (and Mr. Irvin, not represented by you).  Because the email information was just provided today, we are continuing to QC the results of these searches but did want to respond to clarify the above regarding Plaintiff Irvin and let you know the status.

As a point of clarification to your email, I had advised that, due to traveling, I may not have all the information by the time of our meet and confer but that I would continue to get it. I have done that.  During the call, we discussed our interrogatory answer that refers to 23.1 million sessions live in the database for the 30 day period prior to the responses.  You asked for information regarding total number of sessions as well as volume – the total number of sessions residing in the QM database is 353 million (353,303,374 million) since November 2022.  As explained, the .har files (i.e., the replays themselves) do not have fields associated with them; the session metadata captures 43 fields.  We do not in the ordinary course extract .har files or session metadata.  To the extent they are known, there are certain IDs that can be used to search for a session but the starting point to identify those is with an email address; thus, we stand by our statement that email address is the way in which we can identify a session as pertaining to a particular individual (importantly, note that it is only Bass Pro/Cabela's that can do this, not Quantum Metric, as Quantum Metric does not have access to names, email address or full IP addresses).  IP address is masked and therefore not a reliable way by which to search for a session (in addition to the fact that it does not correlate to a particular individual).

With regard to the request regarding JavaScript code, as discussed we cannot produce the code, but have captured the script and we will supplement our answer to interrogatory number 8 to include that information.

We are available to discuss this with you in further detail this week.

Thanks,
Jen

**Jennifer A. McLoone**
*Partner*
jmcloone@shb.com | 305-960-6937