**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| IN RE: BPS DIRECT, LLC and CABELA'S, LLC, WIRETAPPING | MDL NO. 3074<br>2:23-md-03074-MAK |
|---|---|

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF SESSION DATA**

Plaintiffs' Motion to Compel Production of Session Data (ECF No. 74) relates to the Court's October 23 Order, in which the Court instructed the parties to continue to meet and confer regarding "a proportional production of responsive documents, including potential exemplars; or, move to compel overdue productions." ECF No. 67 at ¶ 5(b). Both that Order, and the preceding status conference, contemplated a "proportional production" of session replay data, including data that could be traced to the contacts of the Named Plaintiffs on Defendants' websites. *Id.* Following the parties' attempts to meet-and-confer, during which Plaintiffs' request never deviated from production of the entirety of all session replay data from Quantum Metric, Plaintiffs now ask the Court to compel the production of all session data for the hundreds of millions of session replays that are stored by third party Quantum Metric. The requested session data consists of more than 353 million .JSON files containing textual representations of the information captured by Quantum Metric's proprietary session replay software, including an individual's mouse movements, mouse clicks, URLs of pages and images viewed, and certain keystrokes (some of which are encrypted). *See* Ex. A, Declaration of Doug Cadmus at ¶¶ 5-7, 14, 25.

Such an expansive request is not a proportional production by any means and is simply not necessary for Plaintiffs to evaluate the substance of their claims in this case. Consistent with the Court's Order, Defendants have attempted to identify sessions, and corresponding metadata relating to the named Plaintiffs. Defendants have produced metadata matching email addresses provided by Plaintiffs, the only available replay connected to an email provided by Plaintiffs, and a longer session exemplar. Ex. A at ¶¶ 21-24. The Plaintiffs' email addresses are the only search criteria available by which Defendants can reliably search for sessions that are specifically related to Plaintiffs. Ex. A at ¶ 16. IP addresses, which were raised at the October 23 hearing and by Plaintiffs' counsel as a second potential identifier, cannot reliably be used to search because—

setting aside any factual dispute about the identifying nature of IP addresses—the third and fourth octets of IP addresses in the Quantum Metric system are encrypted. Ex. A at ¶ 17. Therefore, the data that Defendants have produced is the complete set of session replay data that Defendants can connect to Named Plaintiffs. Recognizing that the results of documents actually tied to Plaintiffs is small, Defendants remain willing to produce some other subset of exemplars to provide additional examples of what session replay data contains, but Plaintiffs have refused to engage in a discussion about an exemplar production, instead persisting in their request for a complete production of all of the hundreds of millions of sessions contained in the Quantum Metric system.[1] Plaintiffs' request should be denied as it is unnecessary, duplicative and disproportionate to the discovery needs of this matter.

## I. DEFENDANTS' OBJECTION REGARDING DISCOVERY RELATED TO PUTATIVE CLASS MEMBERS IS CONSISTENT WITH THE COURT'S ORDERS AND THIRD CIRCUIT PRECEDENT.

Plaintiffs first ask the Court to overrule Defendants' objections to discovery of putative class members prior to class certification. Plaintiffs briefly argue that this objection is inconsistent with the Court's orders because Plaintiffs' motion for class certification is due next August.

Courts within the Third Circuit support Defendants' objection that Plaintiffs are not entitled to discovery aimed at class members prior to class certification. *See Enslin v. Coca-Cola Co.*, 2016 WL 7013508, at *2 (E.D. Pa. May 13, 2016) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353-56 (1978)); *see also* McLaughlin on Class Actions § 11:1 (17th ed.) (stating "courts ordinarily will not permit putative class counsel to obtain discovery of class members' identities

[1] Indeed, Defendants have produced a second replay as an exemplar session—it is a longer session and shows an individual making a purchase, thereby allowing Plaintiffs to confirm the veracity of Defendants' statements and what information is (and importantly, is not) visible to Quantum Metric through this process.

at the precertification stage"). Accordingly, objections to discovery related to identities of the putative class are proper and should be well-taken. *See, e.g.*, *Dziennik v. Sealift, Inc.*, 2006 WL 1455464, at *1 (E.D.N.Y. May 23, 2006) ("Courts have ordinarily refused to allow discovery of class members' identities at the pre-certification stage out of concern that plaintiffs' attorneys may be seeking such information to identify potential new clients, rather than to establish the appropriateness of certification.").

## II. PLAINTIFFS' DEMAND FOR PRODUCTION OF ALL SESSION DATA IS NOT PROPORTIONATE TO THE NEEDS OF THE CASE.

### *i. Production of All Session Data Does Not Have Increased Evidentiary Value Over Production Of Some Subset Of Such Data Along With Other Discovery Methods.*

Importantly, Rule 26's proportionality requirement considers the burden of requested discovery weighed against "its likely benefit." Fed. R. Civ. P. 26(b)(1). The party seeking discovery "should show the benefit coming from the request." *Penn Eng'g & Mfg. Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *6 (E.D. Pa. Sept. 3, 2021). Further, Rule 26 limits the extent of discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Here, the benefit of production of hundreds of millions of session replays is vastly outweighed by the burden of doing so.

Plaintiffs' claim that the "session data also contains highly relevant information bearing on class certification issues" because it is "critical to Plaintiffs' experts' understanding as to how class members can be identified." ECF No. 74 at 6. Plaintiffs make this claim without any substantive knowledge of the contents of the session data. Indeed, Plaintiffs do not even attempt to explain why their experts will be better able to understand how the session data can potentially be used to identify class members after looking at over 350 million text-based files than they would be able

to after looking at a much smaller set of those files. As the party seeking this production, Plaintiffs bear the burden of "show[ing] the benefit coming from the request." *Penn Eng'g*, 2021 WL 4037857 at *6. As they have not, their motion should be denied on that basis alone. But even if they had tried to explain why production of *all* the session replays is necessary, any such attempt would undoubtedly have come up short. Each of the session replay files will provide Plaintiffs and their experts with the same insight into the types of data that are transmitted to Quantum Metric.

In addition to some more reasonable sample of session replay files, other discovery mechanisms such as interrogatories and depositions are available to Plaintiffs through which they can further explore or question the capabilities of Quantum Metric's session replay software and the data that is transmitted to Quantum Metric. Indeed, Defendants have already responded to Interrogatories and Requests for Admission that address this very question. Requiring Defendants (and a third party) to incur the expenses to produce over 353 million files each providing the same information, with no additional evidentiary value, is precisely the type of unreasonably cumulative or duplicative discovery that courts must avoid. Fed. R. Civ. P. 26(b)(2)(C)(i).

   ii. *Production of all Session Data is Burdensome*.

Plaintiffs' argument against the burden of producing the 353 million sessions primarily comes down to the fact that Defendants have articulated the scope of the Quantum Metric session replay data in terms of the number of sessions, rather than in terms of Gigabytes or Terabytes. Plaintiffs point to no authority stating that an analysis of burden is only appropriately done by looking at the size of production in those terms. Nor can they. There is no requirement that burden be considered in terms of Gigabytes. Rather, "[c]ourts determine the proportionality of discovery on a case by case basis." *Penn Eng'g.*, 2021 WL 4037857, at *2 (E.D. Pa. Sept. 3, 2021) (quoting *Williams v. BASF Catalysts, LLC*, 2017 WL 3317295, at *4 (D.N.J. Aug. 3, 2017)).

Here, an artificial requirement that the volume of requested session replay data be discussed in terms of digital storage size makes little sense for several reasons. First, Defendants do not use the session data in a way where the size of each session replay file is known to, or relevant to, Defendants. Defendants can access session replays through Quantum Metric's web-based session replay system. Ex. A at ¶ 11. This system allows Defendants to access individual sessions, and interact with them, such as by exporting session metadata. Ex. A at ¶¶ 15, 22. Defendants do not have the ability to export the session replay data outside of this system. Ex. A at ¶ 25. Thus, for Defendants, the relevant quantification of the scope of the request is the number of sessions—not the digital size of each session file.

Further, on November 10, 2023, Defendants received from Quantum Metric—and produced to Plaintiffs—the single, very short, session replay file connected to Plaintiff Moore's email address, as well as a longer exemplar containing more interactions with the Defendants' websites (not associated with a Named Plaintiff). These session replays were exported by Quantum into .JSON files of approximately 2MB and 48 MB in size, respectively. Even using the size of the significantly smaller session file as an approximation for the average size of session replay files, simple arithmetic suggests that an export of all of the more than 353 million replays to individual .JSON files would likely exceed 700 terabytes of data (2MB x 353,000,000 sessions = 706 TB)—an enormous number.

*iii. The Burden of Producing All Session Replay Data Outweighs Any Value That Would Be Gained By Such a Production.*

Plaintiffs' motion to compel, while laying out four factors of "proportionality" forgets the final step of the Court's analysis to this question. An assessment of "whether the burden or expense of the proposed discovery *outweighs its likely benefit*." Fed. R. Civ. P. 26(b)(1). As discussed above, there is little, if any, benefit that will be gained from the production of 353 million session

replay files that would not also be accomplished by production of a smaller, more reasonable number of such files (along with the other discovery mechanisms which remain available to, and have already been employed by, Plaintiffs). Plaintiffs, and their experts, will be able to assess the capabilities of the session replay software and what data is transmitted to Quantum Metric through an analysis of exemplars, and other avenues of discovery, as they would be able to with production of the complete set of session data.

Further, as also discussed above, such a production would be burdensome, not only on Defendants but also on third-party Quantum Metric, as Defendants do not have the ability to themselves export the actual session replay files. Ex. A at ¶ 25. Even requiring production of the information that Defendants *can* export, the session metadata, requires Defendants' employees to manually search for relevant sessions, such as through the use of Plaintiffs' email addresses, and export the results of each query. Ex. A at ¶¶ 18-22. Requiring this extensive manual process of filtering and exporting metadata for millions of individual sessions is not reasonable where there is no value added from the millionth session replay file as compared to the twentieth session replay file.

When, like here, "any benefit of the proposed discovery is minimal" and "the process of acquiring it would be expansive," discovery is not proportional and should not be allowed. *Rhoads Indus., Inc. v. Shoreline Found., Inc.*, 2021 WL 3487309, at *4 (E.D. Pa. Aug. 6, 2021); *see also Capetillo v. Primecare Med, Inc.*, 2016 WL 3551625, at *2-3 (E.D. Pa. June 29, 2016) (limiting discovery requests that would require manual searching and review of database records to a subset of requested records after finding request overly broad and disproportionate).

*iv. Plaintiffs Should Not Be Provided Access to the Quantum Metric Database.*

Plaintiffs' purported "eminently reasonable alternative" proposal is nothing of the kind. Plaintiffs assert, without any support, that all the information contained in the Quantum Metric database will be relevant data. This is not true. The Quantum Metric system contains not only the individual session data that Plaintiffs seek here, but also a significant amount of aggregated, analytics data regarding Defendants' websites that is irrelevant to the claims in this case and not responsive to any of Plaintiffs' discovery requests and to which Defendants maintain valid objections.

Requests to allow a litigant direct access to another party's systems, when only some of the files contained therein are likely to be relevant, are routinely found to be overbroad. *See, e.g.*, *Locke v. Swift Transportation Co. of Arizona, LLC*, 2019 WL 430930, at *4 (W.D. Ky. Feb. 4, 2019). A system like the Quantum Metric system is similar to a digital file cabinet storing different types of information and files. But "the relevance of some information in the filing cabinet does not mean that it is proportional to hand over the keys to the cabinet itself." *Id.*; *see also Holter v. Wells Fargo & Co.*, 281 F.R.D. 340, 344 (D. Minn. 2011) (declining to require plaintiff "to provide defendant with any passwords or user names to any social websites, so that defendant can conduct its own search and review" of those systems). Here, Plaintiffs do not require direct access to the Quantum Metric system. Plaintiffs will have all of the information needed for their experts to assess the data transmitted to Quantum Metric through a review of a subset of session replay files, and can supplement that information through other discovery such as depositions. There is simply no need for the Court to take the extraordinary measure here of giving Plaintiffs the "keys to the cabinet" and letting them rummage around in Quantum Metric's proprietary system and discover highly confidential, proprietary, and irrelevant information about Defendants' websites.

**CONCLUSION**

For these reasons, Plaintiffs' Motion to Compel should be denied.

November 10, 2023

Respectfully Submitted,

By: */s/ Jennifer A. McLoone*

Erin (Loucks) Leffler (PA ID No. 204507)
Shook, Hardy & Bacon L.L.P.
Two Commerce Square
2001 Market St., Suite 3000
Philadelphia, PA 19103
Phone: (215) 278-2555
Fax: (215) 278-2594
eleffler@shb.com

Jennifer A. McLoone (admitted *pro hac vice*)
Shook, Hardy & Bacon L.L.P.
201 South Biscayne Boulevard
Suite 3200
Miami, FL 33131-4332
Phone: (305) 358-5171
Fax: (305) 358-7470
jmcloone@shb.com

Maveric Ray Searle (admitted *pro hac vice*)
Shook, Hardy & Bacon L.L.P.
111 South Wacker Drive
Suite 4700
Chicago, IL 60606
Phone: (312) 704-7741
Fax: (312) 558-1195
msearle@shb.com

***Counsel for Defendants***