IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE: BPS DIRECT, LLC and CABELA'S, LLC, WIRETAPPING** | MDL NO. 3074<br>2:23-md-03074-MAK |

## NOTICE OF COMPLIANCE WITH NOVEMBER 17, 2023 ORDER

Defendants BPS Direct LLC and Cabela's LLC, by and through undersigned counsel, hereby give notice of their compliance with the Court's November 17, 2023 Order. In particular, Defendants set forth their responses to Plaintiffs' requests herein and provide deposition availability.

## Introduction

This MDL consists of claims asserted by seven Named Plaintiffs alleging that Defendants' use of session replay software violates the wiretapping laws of various jurisdictions as well as gives rise to various common law claims. These plaintiffs seek to represent various classes of individuals, as set forth in Plaintiffs' Consolidated Amended Complaint. In short, Plaintiffs contend that they communicated with Defendants via their visits to Defendants' publicly available websites and Defendants improperly shared those communications with Defendants' third-party session replay provider(s).

Defendants have moved to dismiss Plaintiffs' Consolidated Amended Complaint in its entirety, alleging Plaintiffs lack standing and arguing that they have failed to state claims. Defendants' Motion to Dismiss is fully briefed, the Court has heard oral argument on various aspects of the Motion, and has received the Parties' Supplemental Memorandums in connection with the Court's Supplemental Questions.

**Procedural Background**

On October 23, 2023, this Court held a telephonic status conference in this matter, during which time the Parties provided updates to the Court regarding ongoing discovery. In that regard, Plaintiffs represented that Defendants had objected to Quantum Metric, one of Defendants' session replay providers, responding to Plaintiffs' subpoena. Defense counsel explained that Defendants' objected to Quantum Metric producing session replays which Defendants themselves had objected to producing, as such material is proprietary to Defendants per the terms of the Enterprise Service Terms and Conditions ("Agreement") between Quantum Metric and Defendants.[1] A discussion further ensued regarding Defendants' ability to identify session replays associated with Named Plaintiffs, and Defendants agreed to undertake that effort upon receipt from Plaintiffs of the information needed for Defendants to conduct those searches (i.e., email addresses associated with Plaintiffs' website visits).

Following that hearing and consistent with the Court's October 23 Order, the parties engaged in a series of telephonic and email conferrals regarding the production of session replay data. On October 31, 2023, Plaintiffs provided eleven email addresses associated with the seven named Plaintiffs and Defendants used those email addresses to search, using Quantum Metric's session replay user interface, for session replay data associated with the named Plaintiffs.[2] Defendants' efforts in that regard are documented in the Declaration of Doug Cadmus which was filed with the Court in connection with Defendants' Opposition to Plaintiffs' Motion to Compel. [ECF No. 76-1]

---

[1] Importantly, Quantum Metric, a third party who has not been before this Court, likewise raised its own independent objections to Plaintiffs' subpoena. Those objections have not been adjudicated by this or any other Court.

[2] On November 27, 2023, Plaintiff counsel provided an additional email address for Plaintiff Montecalvo, with which Defendants are conducting an additional search.

In short, Defendants identified and produced session metadata summaries for Plaintiffs Moore and Cornell as well as one session replay for Plaintiff Moore.  Defendants were able to extract the session metadata summaries and produce that information to Plaintiffs as excel files.  Defendants were unable to extract the session replay, and requested that their third party vendor Quantum Metric assist.  Quantum Metric provided that replay and another exemplar replay showing an unidentified customer making a purchase (something Plaintiff Moore's session did not show).  Defense counsel also advised Plaintiffs and the Court that Defendants would be willing to produce additional exemplar replays (and associated metadata summaries).

Plaintiffs nonetheless filed a Motion to Compel, ultimately requesting read-only access to Quantum Metric's session replay system.  [ECF No. 74]  Defendants opposed, and continue to oppose, the request for read-only access. [ECF No. 76]  The Court heard argument on this Motion on November 17, 2023 [ECF No. 80], after which the Court entered an Order granting in part and denying in part the Motion. [ECF No. 81]  The Court's November 17, 2023 Order granted Plaintiffs' Motion only in that it ordered Defendants to respond to forthcoming requests by Plaintiffs for information to assist them in interpreting the session replay data produced.  The Court's November 17, 2023 Order otherwise denied Plaintiffs' Motion at this stage.

Finally, Defendants note that the Declaration of Doug Cadmus, attached to Defendants' Opposition, explains the information that is transmitted to Quantum Metric via session replay as well as which of that information is actually visible to Quantum Metric.  Defendants have not, and do not, object to Quantum Metric producing or otherwise explaining this same information.  Defendants maintain their objection to either Defendants or Quantum Metric producing replays for the 353 million sessions presently preserved by Quantum Metric.

I.  **Responses to Plaintiff Requests**

Consistent with the Court's November 17, 2023 Order, on November 21, 2023, Plaintiffs sent an email containing their requests for information to assist them in understanding the session replay metadata summaries and session replay file. Plaintiffs' Requests and Defendants' Responses are set forth below, without waiver of any objections Defendants otherwise have regarding Plaintiffs' discovery requests.[3]

**Introductory Request:** Pursuant to Paragraph 1 of the Court's November 17, 2023 Order, Plaintiffs request that Defendants produce the information identified in our November 6, 2023 and October 31, 2023 emails below to understand the session replay data produced.

RESPONSE: Defendants have fully responded to the inquiries in Plaintiffs' October 31 email, as the email chain bears out. Plaintiffs' November 6, 2023 email was superseded by Plaintiffs' Motion to Compel and does not appear to contain requests beyond those restated in the November 21, 2023 email. Therefore, no separate response is required.

**REQUEST 1**: Plaintiffs' requests encompass data dictionaries, mapping documents, and software developer kits that explain the meaning and structure of data captured by session replay code, including the fields and data available in the session replay data that has been produced to date.

RESPONSE: The session replay data produced consists of a 43-field metadata summary of sessions for Plaintiffs Cornell and Moore and a corresponding data dictionary explaining each of the 43-fields was produced along with the summaries (Bates Number BPS_0001233), as reflected in Defendants' November 2, 2023 Email. Defendants likewise produced a JSON file for Mr. Moore's October 31, 2023 session – the only replay that exists for a Named Plaintiff – as well as another exemplar replay showing an unidentified customer who made a purchase. Defendants access replays through Quantum Metric's proprietary system and were unable to extract the replays from that system. Therefore, the JSON files produced were extracted by Quantum Metric from Quantum Metric's session replay system and were provided by Quantum Metric via ftp site to defense counsel. Defendants do not have data dictionaries, mapping documents or software developer kits that explain the meaning of the JSON files. The JSON files are text files of the website code transmitted to Quantum Metric as a user navigates the basspro.com or cabelas.com websites, interspersed with code from Quantum Metric that allows the Quantum Metric system to

---

[3] Defendants note their objection to the process by which information has been requested, as Plaintiffs' November 21, 2023 requests were not correlated in any way to the discovery requests propounded by Plaintiffs and were not themselves propounded as formal discovery requests so as to enable Defendants an opportunity to formally object and respond. Defendants likewise object in that Defendants were ordered to provide responses to requests that had not yet been made and were not properly before the Court.

recreate a visual representation of the user's website visit within Quantum Metric's system. The JSON files show that code from the website interaction, not fielded structured data and Defendants are unaware to what extent Quantum Metric has data dictionaries, etc., that explain the meaning of the JSON files.[4] Defendants refer all questions regarding storage of the data contained in the JSON files to Quantum Metric. Defendants also refer all questions regarding how the JSON files run in Quantum Metric's system to Quantum Metric. Defendants do not have any further information responsive to this Request.

**REQUEST 2**: Plaintiffs request information sufficient to understand all field names, many of which are indecipherable, including, as examples: "1"; "C"; "SN"; and ")". Plaintiffs also require information sufficient to understand the meaning of any named fields, such as, for example, "ekey"; "hit_id"; "bad_packets"; "type"; and "hash". Plaintiffs request the complete definitions associated with all fields available in the data, including information that defines all values associated with defined events (*e.g.*, 1=click; 2=mouse movement). Plaintiffs also request information sufficient to identify and distinguish between specific events within a given session, including how to determine the event-type associated with an event.

RESPONSE: Defendants understand this Request to relate to the JSON files produced. Defendants do not agree with Plaintiffs' characterization of information such as "1", "C", "SN" and ")" as field names. Defendants understand these to be contained within the website code transmitted from the user's website visit. Defendants do not know the meaning of what Plaintiffs refer to as "named fields" (such as "ekey", "hit_id", "bad_packets", "Type" and "hash"), Defendants do not have definitions for field names within the JSON files, and Defendants do not have any data dictionary or other information that would identify and explain these fields for Plaintiffs. Defendants reiterate that they do not view the information in the JSON files outside of Quantum Metric's proprietary system. Defendants do not have visibility into how Quantum Metric's proprietary system operates and refer Plaintiff to Quantum Metric.

**REQUEST 3**: Plaintiffs request that Defendants explain how to link session metadata to session replay data, including the specific field(s) used to link the data sets (*e.g.*, whether "id" in the session metadata is linked to "session_id" in the session replay data), and provide information sufficient to identify all fields in the session replay data that are associated with fields in the session metadata. Certain fields in the session metadata, including email, firstname, lastname, and login, are blank. We reiterate our request for information regarding where the data associated with such fields is stored, including how to identify the data associated with such fields in the session replay data, as well as information sufficient to understand by reference to the data how Defendants determined that the data was associated with a Plaintiff. Plaintiffs also request information sufficient to understand when a unique "user_id", as referenced in the metadata, is created, and what data is considered that results in the generation of a new "user_id".

RESPONSE: Defendants' November 1, 2023 email response to Plaintiffs answers how session metadata is "linked" to a session replay and Plaintiffs restated their understanding in the November

---

[4] Defendants note Quantum Metric's Subpoena Response indicates "Quantum agrees to produce, once the parties enter into an appropriate confidentiality agreement, an Enterprise Software-as-a-Service Security flowchart demonstrating how Quantum's session replay tool encrypts data sent by its customers in the usual course of its business." (*See* QM Sub. Resp. to Req. No. 2)

6, 2023 email – Defendants nonetheless confirm again that the metadata summaries and the replays can be linked via the field 0 column data, "id". Defendants have also previously explained that certain metadata fields are blank because the information is not visible to Quantum Metric and can only be viewed by Defendants, if at all, using a decryption key (*See* November 1, 2023 Email Response). Defendants refer Plaintiffs to the Declaration of Doug Cadmus which explains how he searched for information associated with Named Plaintiffs. Defendants note Quantum Metric's subpoena response which states "Quantum stores encrypted customer data on servers operated by an enterprise cloud hosting provider" (QM Sub. Resp. to Req. No. 17) and refer Plaintiffs to Quantum Metric for additional information regarding how such information is stored by Quantum Metric. Defendants do not create a "user_id" and understand the creation of a "user_id" to be a proprietary function of Quantum Metric's session replay system. Defendants therefore refer Plaintiffs to Quantum Metric.

**REQUEST 4**: Plaintiffs also request production of any decryption keys in Defendants' possession, custody, or control needed to access and interpret encrypted data, including to decrypt data associated with IP addresses, as well as information sufficient to understand and decrypt data available in the "reqHeaders_enc", "resHeaders_enc", "req_enc", "res_enc", and "encrypted_cookies" fields, and information sufficient to understand any values in the "hash" field and any values used to create the value in the "hash" field.

RESPONSE: Defendants' decryption key for session replays operates and exists within Quantum Metric's user interface. Defendants therefore cannot produce the decryption key. Moreover, Defendants' decryption key does not decrypt IP addresses. On November 1, 2023, Defendants explained: "With regard to IP address, the third and fourth octets are not visible in the ordinary course of business. Unlike other data, because of the nature of an IP address, the encryption here is done at the server side and this information, unlike other encrypted or withheld information, is available to QM to unlock with a separate decryption key." Defendants again refer Plaintiffs to Quantum Metric for the interpretation of the JSON files produced in this litigation. Defendants further reiterate their objections to producing information to Plaintiffs that is encrypted as to Quantum Metric as such information is not relevant to the claims or defenses in this case and note that decryption must be done on a session-by-session basis.

    **II.**    **Deposition Dates**

In further compliance with the Court's Order, Defendants' witness is available on January 23, 2024 for deposition. Defendants understand that Plaintiffs are amenable to conducting this deposition via Zoom or similar technology.

Defendants have requested a deposition date for a Quantum Metric witness, but such witness is not within Defendants' control. Defendants respectfully object to the Court's November 17,

2023 Order to the extent that it requires Defendants to procure and produce the deposition of a third party witness.

## CONCLUSION

As set forth above, Defendants have complied with this Court's November 17, 2023 Order and, further, have conferred in good faith with Plaintiffs regarding an exemplar production of session replay data keeping in mind Rule 26's relevance and proportionality standards that govern discovery.

December 4, 2023

Respectfully Submitted,

By: */s/ Jennifer A. McLoone*
Erin (Loucks) Leffler (PA ID No. 204507)
**SHOOK, HARDY & BACON L.L.P.**
Two Commerce Square
2001 Market St., Suite 3000
Philadelphia, PA 19103
Phone: (215) 278-2555
Fax: (215) 278-2594
eleffler@shb.com

Jennifer A. McLoone (admitted *pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
201 South Biscayne Boulevard
Suite 3200
Miami, FL 33131-4332
Phone: (305) 358-5171
Fax: (305) 358-7470
jmcloone@shb.com

Maveric Ray Searle (admitted *pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
111 South Wacker Drive
Suite 4700
Chicago, IL 60606
Phone: (312) 704-7741
Fax: (312) 558-1195
msearle@shb.com

***Counsel for Defendants***