**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: BPS DIRECT, LLC and CABELA'S, LLC, WIRETAPPING | MDL NO. 3074<br>2:23-md-03074-MAK |

# DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS

Erin (Loucks) Leffler (PA ID No. 204507)
**Shook, Hardy & Bacon L.L.P.**
Two Commerce Square
2001 Market St., Suite 3000
Philadelphia, PA 19103
Phone: (215) 278-2555
Fax: (215) 278-2594
eleffler@shb.com

Jennifer A. McLoone (admitted *pro hac vice*)
**Shook, Hardy & Bacon L.L.P.**
201 South Biscayne Boulevard
Suite 3200
Miami, FL 33131-4332
Phone: (305) 358-5171
Fax: (305) 358-7470
jmcloone@shb.com

***Counsel for Defendants***

# TABLE OF CONTENTS


Page

TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

FACTUAL BACKGROUND ........ 2

I. BPS Uses Session Replay To Improve The Customer Experience On Its Websites. ........ 2

A. Plaintiffs' Interactions With BPS's Websites. ........ 3

B. Procedural History. ........ 3

LEGAL STANDARD ........ 4

ARGUMENT ........ 5

I. Plaintiffs Lack Article III Standing ........ 5

II. Alternatively, Plaintiffs Lack Standing To Assert Claims For Injunctive Relief. ........ 6

III. Plaintiffs' Wiretap Claims (Counts I, III And V) Fail. ........ 7

A. Plaintiffs Do Not Allege Interception of any "Contents" Under the Federal, Massachusetts, and Pennsylvania Acts. ........ 7

B. BPS's Party Status Precludes Claims Under the Federal Act (Count I). ........ 9

1. BPS was a party to the allegedly intercepted communications. ........ 9

2. The crime-tort exception does not apply. ........ 9

C. Plaintiffs Do Not Allege a Contemporaneous "Interception." ........ 11

D. Session Replay Software Is Not a "Device" under the Massachusetts and Pennsylvania Acts. ........ 12

E. Session Replay Data Is Not an "Electronic Communication" under the Pennsylvania Act ........ 13

IV. Plaintiffs' Invasion Of Privacy Claims (Counts IV And VI) Should Be Dismissed. ........ 14

**Page**

A. Plaintiffs Had No Reasonable Expectation of Privacy in Their Mouse Clicks, Mouse Movements, URLs Visited, or Keystrokes. .......... 15

B. BPS's Use of Session Replay Software Is Not "Objectionable to a Reasonable Person" and Is Not "Highly Offensive." .............................. 16

V. Plaintiffs Fail To State A Claim For Violation Of The CFAA (Count II)........... 17

VI. Plaintiffs' Stated Conversion Claims Fail (Counts VII and VIII). ....................... 19

CONCLUSION.......................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adair v. Cigna Corp. Servs., LLC*,
818 F. Supp. 3d 641 (E.D. Pa. 2026) ....................4, 6

*In re Ahern Rentals, Inc., Trade Secret Litigation*,
2021 WL 5756421 (W.D. Mo. Aug. 27, 2021)....................19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................4

*Axford v. TGM Andover Park, LLC*,
2021 WL 681953 (D. Mass. Feb. 22, 2021) ....................16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................4, 5

*In re BPS Direct, LLC; Cabela's LLC Wiretapping Litig.*,
175 F.4th 423 (3d Cir. 2026) ....................4, 5, 6

*In re BPS Direct, LLC*,
705 F. Supp. 3d 333 (E.D. Pa. 2023) ....................7

*Brooks Grp. & Assocs., Inc. v. LeVigne*,
2014 WL 1490529 (E.D. Pa. Apr. 15, 2014) ....................14

*Cardoso v. Whirlpool Corp.*,
2021 WL 2820822 (S.D. Fla. July 6, 2021)....................13

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)....................10, 11

*Commonwealth v. Hart*,
28 A.3d 898 (Pa. 2011)....................13

*Commonwealth v. Moody*,
466 Mass. 196 (Mass. 2013) ....................8

*Content Square SAS v. Quantum Metric, Inc.*,
2021 U.S. Dist. LEXIS 51656 (D. Del. Mar. 18, 2021) ....................2

*Cook v. Gamestop, Inc.*
148 F.4th 152 (3d Cir. 2025) ....................4,5

**Page**

*Cook v. Gamestop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023)....8, 16

*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001)....10, 11

*Eagle v. Morgan*,
2011 WL 6739448 (E.D. Pa. Dec. 22, 2011)....18

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)....9

*Foremost Ins. Co. v. Pub. Serv. Comm'n of Mo.*,
985 S.W.2d 793 (Mo. Ct. App. 1998)....20

*Goldstein v. Costco Wholesale Corp.*,
559 F. Supp. 3d 1318 (S.D. Fla. 2021)....8, 14

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015)....9

*Hartig Drug Co. v. Senju Pharm. Co.*,
836 F.3d 261 (3d Cir. 2016)....4

*Jacome v. Spirit Airlines*,
2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021).... *passim*

*In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.*,
903 F.3d 278 (3d Cir. 2018)....7

*Jones v. Aberdeen Proving Ground Fed. Credit Union*,
2022 WL 1017094 (D. Md. Apr. 5, 2022)....17

*Kline v. Sec. Guards, Inc.*,
386 F.3d 246 (3d Cir. 2004)....16

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d. 868 (9th Cir. 2002)....11

*LVRC Holdings LLC v. Brekka*,
581 F.3d 1127 (9th Cir. 2009)....18

*Massie v. General Motors LLC*,
2022 WL 534468 (D. Del. Feb. 17, 2022)....15

*Nagy v. Bell Telephone Co. of PA*,
436 A.2d 701 (Pa. Super. 1981)....17

**Page**

*Neal v. United States*,
599 F. Supp. 3d 270 (D. Md. 2022) ........................................................................15

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262, 268 (3d Cir. 2016)..........................................................................16

*Pipeline Productions, Inc. v. S&A Pizza, Inc.*,
2021 WL4811206 (W.D. Mo. Oct. 14, 2021)...................................................18, 19

*Polay v. McMahon*,
10 N.E.3d 1122 (Mass. 2014) ...............................................................................14

*Popa v. Harriet Carter Gifts, Inc.*,
426 F. Supp. 3d 108 (W.D. Pa. 2019).............................................................16, 17

*Pope v. Cordell*,
47 Mo. 251 (Mo. 1871)..........................................................................................20

*QVC, Inc. v. Resultly, LLC*,
159 F. Supp. 3d 576 (E.D. Pa. 2016) ....................................................................20

*Rich v. Rich*,
2007 WL 4711508 (Mass. 2007) ............................................................................8

*Rosemont Taxicab Co. v. Philadelphia Parking Auth.*,
327 F. Supp. 3d 803 (E.D. Pa. 2018) ....................................................................19

*Shamrock Foods Co. v. Gast*,
535 F. Supp. 2d 962 (D. Ariz. 2008) ....................................................................18

*Smith v. Unilife Corp.*,
72 F. Supp. 3d 568 (E.D. Pa. 2014) ......................................................................14

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
903 F. Supp. 2d 942 (S.D. Cal. 2012)...................................................................13

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016).................................................................................................4

*United States v. Ackies*,
918 F.3d 190 (1st Cir. 2019)..................................................................................13

*United States v. Bowers*,
2021 WL 2882438 (W.D. Pa. July 8, 2021) .........................................................15

*Van Buren v. United States*,
141 S. Ct. 1648 (2021)...........................................................................................18

**Page**

*Vita v. New England Baptist Hosp.*,
243 N.E.3d 1185, 1205 (Mass. 2024) ........................................................................8

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ....................................................................8

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ...........................................................................11, 12

**Statutes and Rules**

18 Pa. C.S. § 5702.......................................................................................7, 12, 13

18 U.S.C. § 1030(a) ........................................................................................................18

18 U.S.C. § 2510(8) ........................................................................................................7, 8

18 U.S.C. § 2511 *et seq.*...................................................................................9, 10, 11

Fed. R. Civ. P. 12(b)(1)...............................................................................................2, 3, 4

Fed. R. Civ. P. 12(b)(6)...............................................................................................2, 3, 4

Mass. Gen. Laws ch. § 272 *et seq.* ..........................................................................7, 11, 12

## INTRODUCTION

Originally, eight Plaintiffs brought this action against Defendants BPS Direct, LLC and Cabela's Direct, LLC (collectively "BPS") challenging BPS's use of session replay software—a ubiquitous tool that companies use to analyze the functionality of their websites. BPS moved to dismiss that complaint asserting, among other arguments, a facial challenge to Plaintiffs' standing because, even accepting their allegations as true, the alleged interception was not a concrete injury sufficient to confer standing. This Court found that all of the Plaintiffs lacked Article III standing. Plaintiffs appealed. On appeal, the Third Circuit largely affirmed this Court's dismissal and found that the alleged interception of general web browsing activities (page views, keystrokes, mouse movements, etc.) does not constitute a sufficient injury to satisfy Article III. However, the Third Circuit provided Plaintiffs with a narrow path to establish standing if they could truthfully allege that BPS's session replay software collected "a person's complete credit card or debit card number." As Plaintiffs Cornell and Montecalvo had alleged that they made purchases and entered "payment information" on BPS's website, the Third Circuit reversed only as to those plaintiffs.

Now, Cornell and Montecalvo continue to challenge BPS's use of session replay software through their Second Consolidated Amended Class Action Complaint ("Complaint" or "Am. Compl.") (ECF No. 110). Their Complaint does not allege that Plaintiffs' "complete credit card or debit card number" was intercepted by the session replay software, but they continue to vaguely allege collection of their "payment information."

Plaintiffs make this allegation despite the existence of sworn and unrebutted testimony—that Plaintiffs have known about since 2023—that BPS's session replay software was configured to never collect or transmit payment card information. Accordingly, BPS now brings a factual challenge to Plaintiffs' standing—relying on this unrebutted record testimony. Absent the collection and transmission of payment card information, Plaintiffs cannot fit into the narrow

window for Article III that the Third Circuit left open. But even if Plaintiffs had standing, each claim fails on its face, demanding dismissal under either Rule 12(b)(1) or 12(b)(6).[1]

## FACTUAL BACKGROUND

### I. BPS Uses Session Replay To Improve The Customer Experience On Its Websites.

BPS is an owner of physical retail stores and websites that sell outdoor products, including hunting gear, firearms, and camping equipment. Am. Compl. ¶ 83. BPS hires third-party vendors to create and implement session-replay code on its websites. *Id.* ¶ 1. Session replay software is a ubiquitous web technology that "achieve[s] an improved technological result in *conventional industry practice*." *Content Square SAS v. Quantum Metric, Inc.*, 2021 U.S. Dist. LEXIS 51656, at *13 (D. Del. Mar. 18, 2021).[2] It allows companies to capture data points and recreate a visual "play back" of a website visitor's browsing session, thereby helping the companies "improve customer experiences." Am. Compl. ¶ 49. Specifically, when a customer visits a website with session replay code, the software captures the customer's page views, text entries, clicks, mouse movements, keystrokes, scrolls, zooms, window resizes, and other forms of navigation. *Id.* ¶ 63. BPS sends this data to the session-replay vendors, who then use their platforms to arrange the data in a format that is most useful for BPS. *Id*.

With regard to keystrokes and information input into form fields, session replay software can be configured such that the information is either transmitted and encrypted, or blocked and never transmitted at all. ECF No. 76-1, Nov. 10, 2023 Decl. of Doug Cadmus ("Cadmus Dec.") at

---

[1] In raising this Article III challenge as to Plaintiff Montecalvo, Defendants do not waive, and instead expressly preserve, all additional arguments and defenses. To be clear, since initiating this lawsuit, Plaintiff Montecalvo has continued to make purchases in Defendants' retail stores and on cabelas.com, including after revisions to the website Privacy Policy and Terms of Use introduced an arbitration provision. Plaintiff Montecalvo thus has consented to those revised policies, including the retroactive arbitration provision contained therein.

[2] Emphasis added throughout unless otherwise noted.

¶ 6. BPS's session replay software is configured to block payment information such as credit card number, expiration date, and CVV, meaning that the information is never transmitted to a session replay vendor. *Id.* at ¶ 9.

**A. Plaintiffs' Interactions With BPS's Websites.**

Plaintiffs each allege that they visited the website of Cabela's and/or BPS and made purchases from the websites. Am. Compl. ¶¶ 93, 100. Plaintiffs offer few specifics about their interactions with BPS's websites; declining to even allege whether they used a credit card, a debit card, or some other type of payment for their purchases. *Id.* Plaintiffs continue to allege generally that BPS's session replay code tracked their "mouse clicks and movements, keystrokes, search terms, information inputted by Plaintiffs and Class Members, and pages and content clicked on and viewed by Plaintiffs." *E.g.*, *Id.* ¶ 121. Nowhere do Plaintiffs allege that they were harmed by the use or purported use of this technology, beyond conclusory assertions of mental distress.

**B. Procedural History.**

Following consolidation in this Court by the JPML, Plaintiffs' original complaint was filed on August 14, 2023. ECF No. 53. BPS moved to dismiss that complaint pursuant to Rules 12(b)(1) and 12(b)(6) on September 5, 2023. During the briefing on BPS's motion to dismiss, discovery continued. On November 10, 2023, as an attachment to BPS's brief opposing Plaintiffs' motion to compel production of session replay data, BPS submitted to this court a declaration of Doug Cadmus, Senior Manager, E-Commerce for Bass Pro Shops, which explained, among other things, that BPS's session replay software was configured so that payment card information was never sent to the session replay providers. ECF No. 76, 76-1.

On December 5, 2023, this Court granted BPS's motion found that Plaintiffs all lacked Article III standing and dismissed the complaint. ECF No. 88. Plaintiffs appealed that decision on December 20, 2023. ECF No. 98. The Third Circuit affirmed this Court's dismissal of all plaintiffs

who did not allege that they made a purchase on BPS's website, finding that neither an allegation of interception of general web browsing data including "clicks, scrolls, and searches for outdoor products on BPS's websites" nor an alleged ability for session replay providers to develop user "fingerprints" alleges a harm sufficient to confer Article III standing. *In re BPS Direct, LLC; Cabela's, LLC Wiretapping Litig.*, 175 F.4th 423, 433 (3d Cir. 2026). The Third Circuit, however, reversed with respect to the plaintiffs who alleged a purchase (Cornell and Montecalvo) finding that "a person's complete credit card or debit card number" is a piece of information that is sufficiently sensitive for its alleged interception to resemble "the same interests implicated in the traditional common law cause of action of intrusion upon seclusion." *Id.* (quoting *Cook v. GameStop, Inc.*, 148 F.4th 152, 157 (3d Cir. 2025)).

Plaintiffs Cornell and Montecalvo filed the operative Complaint on July 15, 2026.

## LEGAL STANDARD

To survive a Rule 12(b)(1) motion to dismiss, Plaintiffs, as the party invoking federal jurisdiction, bear the burden of establishing the elements of standing, including injury in fact. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). A challenge to standing may be either a facial or a factual attack, with the distinction determining how the pleadings must be reviewed. *Adair v. Cigna Corp. Servs., LLC*, 818 F. Supp. 3d 641, 658 (E.D. Pa. 2026). When faced with a factual attack on standing, plaintiffs "ha[ve] the burden of proof that jurisdiction does in fact exist." *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016). "No presumptive truthfulness attaches to the plaintiff's allegations" and the Court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.*

To survive a Rule 12(b)(6) motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A complaint does not suffice if it tenders naked assertions devoid of further

factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* This demands "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 570.

## ARGUMENT

### I. Plaintiffs Lack Article III Standing.

Plaintiffs' Complaint must be dismissed because Plaintiffs have not suffered any concrete injury that confers Article III standing.

In reviewing this Court's prior decision finding a lack of standing, the Third Circuit made clear that an allegation of collection of general web browsing data including "clicks, scrolls, and searches for outdoor products on BPS's websites" nor an alleged ability for session replay providers to develop user "fingerprints" alleges a harm sufficient to confer Article III standing. *In re BPS Direct*, 175 F.4th at 433. The Third Circuit, however found that "a person's complete credit card or debit card number" is a piece of information that is sufficiently sensitive for its alleged interception to resemble "the same interests implicated in the traditional common law cause of action of intrusion upon seclusion." *Id.* (quoting *Cook*, 148 F.4th at 157).

Here, Plaintiffs still allege their previously-rejected theory that they have standing based on the alleged interception of any web browsing data like mouse clicks and keyboard strokes. *See* Am. Compl.¶¶ 36-37. But the Third Circuit's ruling on the dismissal of the original complaint clearly—and directly—precludes that theory of standing. *In re BPS Direct*, 175 F.4th at 433. Under the Third Circuit's decision, Plaintiff's standing is tied directly to their ability to allege the collection and dissemination of their "complete credit card or debit card number." *Id.*

Despite the Third Circuit's guidance, Plaintiffs still do not directly allege that their "complete credit card or debit card numbers" were captured by the session replay software. Instead,

Plaintiffs still allege only that they entered "payment and billing information into form fields during the checkout process." Am. Compl. ¶¶ 93, 100. Even if this is intended to refer to a complete credit card or debit card number (as opposed to something like a gift card), Plaintiffs do not have standing for the simple reason that credit card information is never transmitted by BPS's session replay software. *See* ECF No. 76-1, Cadmus Dec. [3] Instead, "[s]ession replay is configured on basspro.com and cabelas.com to block certain information" that "includes payment information such as credit card number, expiration date, and CVV." ECF No. 76-1 at ¶ 9. Such "information is masked and not transmitted to Quantum Metric or Bass Pro/Cabela's." *Id.*

Plaintiffs refiled their Complaint even though they have known that payment card information was not transmitted to session replay providers at least since the Cadmus Declaration was submitted to this Court during a discovery dispute on November 10, 2023. No evidence has ever been presented by Plaintiffs that refutes Mr. Cadmus's sworn testimony. Because payment information "is masked and not transmitted" to the session replay providers, Plaintiffs cannot meet their burden to establish that their "complete credit card or debit card numbers" were ever disclosed. *In re BPS Direct*, 175 F.4th at 433. They therefore lack standing and the Complaint should be dismissed.

## II. Alternatively, Plaintiffs Lack Standing To Assert Claims For Injunctive Relief.

As this Court previously held, Plaintiffs also lack standing to seek injunctive relief. In the Court's own words:

> We find our Website Users are not likely to suffer future injury from Bass or Cabela's conduct. Website Users allege Bass and Cabela's used a third party to track their movements on the websites without their knowledge. Website Users brought this lawsuit and are

[3] The Court can rely on Mr. Cadmus's declaration in deciding this factual attack to jurisdiction. *See, e.g.*, *Adair*, 818 F. Supp. 3d at 658 (collecting cases where factual standing is attacked through sworn declarations).

> presumably now aware of the alleged risks associated with browsing Cabela's and Bass's websites. Website Users' activity on Bass and Cabela's websites is entirely voluntary and we assume Website Users will act rationally in light of the information they possess. They may visit Cabela's or Bass's website again, but they will do so with the knowledge session replay is capturing their movements. 'Pleading a lack of self-restraint may elicit sympathy but it will not typically invoke the jurisdiction of a federal court.' Website Users will not be deceived again in the future."

*In re BPS Direct, LLC*, 705 F. Supp. 3d 333, 366-67 (E.D. Pa. 2023) (internal citations omitted).

The Court's earlier ruling was well-founded and consistent with Third Circuit precedent. *See, e.g.*, *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 292-93 (3d Cir. 2018) (finding that "[t]he law affords [the plaintiff] the dignity of assuming that she acts rationally, and that she will not act in such a way that she will again suffer the same alleged 'injury.'). Plaintiffs have done nothing to change the Court's prior conclusion. Plaintiffs lack standing to pursue injunctive relief.

## III. <u>Plaintiffs' Wiretap Claims (Counts I, III And V) Fail.</u>

Plaintiffs assert claims (Counts I, III, and V) under three different state and federal statutes directed at wiretapping: the Federal Electronic Communications and Privacy Act (the "ECPA"), and the analogous state statutes from Massachusetts and Pennsylvania. Each of these claims fails for a number of independent reasons.

### A. Plaintiffs Do Not Allege Interception of any "Contents" Under the Federal, Massachusetts, and Pennsylvania Acts.

Plaintiffs fail to state a viable claim under the federal, Massachusetts, and Pennsylvania wiretap laws because BPS has not acquired any "contents." Not all data related to the communications trigger these privacy statutes. Each statute only prohibits the unlawful interception of the "contents" of a communication. *See* 18 U.S.C. § 2510(8); Mass. Gen. Laws ch. § 272; 18 Pa. C.S. § 5702.

The wiretap statutes define "contents" as "any information concerning the substance, purport, or meaning of [a] communication." *See, e.g.*, 18 U.S.C. § 2510(8). In other words, the defendant must capture "the intended message conveyed by the communication," like the text of an email message or words spoken on a call. *Cook v. Gamestop, Inc.*, 689 F. Supp. 3d 58, 68 (W.D. Pa. 2023); *see also In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Accordingly, types of information that Courts have found to constitute "contents" in the wiretapping context include passwords, instant messages, and text messages. *See, e.g.*, *Rich v. Rich*, 2007 WL 4711508, at *3 (Mass. 2007); *Commonwealth v. Moody*, 466 Mass. 196, 207-209 (Mass. 2013).

In contrast, courts routinely find that session replay data does not constitute "contents" under wiretapping statutes. *See, e.g.*, *Cook*, 689 F. Supp. 3d at 70-72 (rejecting argument that mouse movements and clicks, URLs, and keystrokes allegedly captured by session replay software constitute "contents" under the Pennsylvania act); *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1321–22 (S.D. Fla. 2021) (holding that mouse movements, clicks, pages visited, and keystrokes, including information allegedly input by the plaintiff, were not "contents" under Florida's analogous wiretap statute); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) (clicks, pages visited, and keystrokes, including shipping and billing information allegedly captured by session replay are not "contents" for wiretapping purposes); *Jacome*, 2021 WL 3087860, at *4 (dismissing wiretapping claim based on the same session replay data because it "is precisely the type of non-record information that courts consistently find do not constitute 'contents' under the Federal Wiretap Act or any of its state analogs because it does not convey the substance or meaning of any message," and collecting cases).[4]

[4] The Massachusetts Supreme Judicial Court also rejected claims based on similar website technology allegedly capturing website visitors' mouse movements, clicks, keystrokes in searches, and URLs. *See Vita v. New England Baptist Hosp.*, 243 N.E.3d 1185, 1205 (Mass. 2024).

Plaintiffs' wiretap claims fare no better than this long line of dismissed session replay claims. Plaintiffs fail to allege interception of "contents" and Counts I, III, and V fail.

**B. BPS's Party Status Precludes Claims Under the Federal Act (Count I).**

BPS's party status dooms Plaintiffs' claims under the ECPA.

***1. BPS was a party to the allegedly intercepted communications.***

The ECPA expressly states that "a party to the communication" cannot be liable for wiretapping or eavesdropping. 18 U.S.C. § 2511(2)(d) ("it shall not be unlawful under this chapter for a person…to intercept a wire, oral, or electronic communication where such person is a party to the communication."); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) (noting that the federal Wiretap Act "contain[s] an exemption from liability for a person who is a 'party' to the communication . . ."); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 143 (3d Cir. 2015) (same).)

As the intended recipient of Plaintiffs' communications, there is no question that BPS was a party to the communications. *See In re Google*, 806 F.3d at 143 (3d Cir. 2015). Plaintiffs admit as much in the Complaint. *See, e.g.*, Am. Compl. ¶ 114 ("Like Plaintiffs, each Class member visited one or both of Defendants' Websites with Session Replay Code embedded in them, and the Session Replay Code intercepted the Class Members' Website Communications *with Defendants' Websites* . . . .").

***2. The crime-tort exception does not apply.***

Plaintiffs allege that BPS should nonetheless be held liable under the ECPA because Defendants "clearly had a criminal or tortious purpose" for intercepting their communications, namely invading Plaintiffs' privacy and to violate "computer crime laws". Am. Compl. ¶¶ 149-150. This theory lacks merit.

The crime-tort exception applies when a party obtains a communication "for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or any state." 18 U.S.C. § 2511(2)(d). This exception is "construed narrowly." *United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013). And Courts have routinely held that "[i]ntent may not be inferred simply by demonstrating that the intentional act of recording itself constitute a tort." *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010). Instead, the statute "requires that the interceptor intend to commit a crime or tort *independent* of the act of recording itself." *Id.*; *see also, e.g.*, *Jiau*, 734 F.3d at 152 (crime-tort exception "is confined to instances where the recording party intends to use the recording to harm or injure a recorded party, such as to blackmail, threaten, or publicly embarrass the recorded party"); *Boddie v. ABC*, 881 F.2d 267, 270 (6th Cir. 1989) ("It is the use of the interception with intent to harm rather than the fact of interception that is critical to liability"). Further, this independent tort must be either the "*primary*´motivation" or "a *determinative* factor in the . . . motivation for intercepting the conversation." *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 516 (S.D.N.Y. 2001); *see also Doe v. Lawrence General Hosp.*, 2025 WL 2808055, at *12 (D. Mass. Aug. 29, 2025).

Here, Plaintiffs' only basis for "tortious or criminal" intent is that Defendants allegedly acted with the intent to invade Plaintiffs' privacy in violation of common law and computer crime statutes. *See* Am. Compl. ¶¶ 149-150. Plaintiffs have not adequately alleged that BPS's use of session replay was unlawful at all. But they certainly have not alleged that BPS used this technology for the *purpose* of invading their privacy or violating computer crime laws, much less that any such purpose was a "determinative factor." To the contrary, they repeatedly allege that BPS's purpose for the allegedly intercepted information was to "use[] that data and information to maximize profits through predictive marketing and other targeted advertising practices." *E.g.*, Am.

Compl. ¶¶ 201, 240. This is not a criminal or tortious purpose. *See, e.g.*, *DoubleClick*, 154 F. Supp. 2d at 519 ("DoubleClick's purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money."); *Roe v. Amgen Inc.*, 2024 WL 2873482, at *15-16 (C.D. Cal. June 5, 2024) ("The crime-tort exception is inapplicable where a defendant's primary motivation is to make money rather than to injure plaintiffs tortiously or criminally.")

Courts dismiss similar claims alleging that the defendants intercepted the plaintiffs' communications for the purpose of invading their privacy. *See, e.g*, *Caro*, 618 F.3d at 100-01 ("invasion of privacy by intrusion upon seclusion . . . occurs through the simple act of the recording itself and therefore cannot satisfy the Wiretap Act's requirement of a separate and independent tortious intent.") And courts routinely dismissed claims that rely on the alleged interception constituting a statutory violation as not satisfying the crime-tort exception. *See*, *e.g.*, *Lawrence General,* 2025 WL 2808055, at *13 (rejecting this argument based on alleged HIPAA violations because "the interception that provides the basis for the alleged ECPA violation is itself the disclosure that provides the basis for the HIPAA violation."); *Roberts v. Charlotte Mecklenburg Hosp. Auth.,* 2025 WL 880538, at *3 (W.D.N.C. Mar. 20, 2025) ("Plaintiffs have not plausibly alleged that Defendant's purpose for sharing [health information] was to breach HIPAA.").

Because BPS is a party to the communications at issue and the crime-tort exception does not apply, Count I must be dismissed.

### C. Plaintiffs Do Not Allege a Contemporaneous "Interception."

Each of the wiretap statutes that Plaintiffs rely on applies only to an "interception." *See* 18 U.S.C. § 2511(1)(c); 18 Pa C.S.A. § 5703; Mass. Gen. Laws ch. 272 § 99 C. To "intercept" a communication ordinarily requires the acquisition to occur contemporaneous with the transmission of the messages. *Konop v. Hawaiian Airlines, Inc.,* 302 F.3d. 868, 878 (9th Cir. 2002) (under the federal wiretap act, the interception of a communication "in transit" means it must be "acquired

during transmission" and not after the communication has already been received by the recipient and "is in electronic storage"). Here, any alleged interception of Plaintiffs' interactions with BPS's website did not occur contemporaneous to their transmission. Instead, the Complaint reveals that a user's interactions with BPS's website are captured in intervals, "accumulated," and sent "in blocks periodically throughout the user's website session"—not contemporaneously. Am. Compl. ¶ 63. That is not wiretapping. And Count I should be dismissed. *See, e.g.*, *Jacome v. Spirit Airlines*, 2021 WL 3087860, at *6 (Fla. Cir. Ct. June 17, 2021) (finding "allegations without pleading any ultimate facts in support are insufficient to demonstrate that any interception happened contemporaneously with transmission.")

### D. Session Replay Software Is Not a "Device" under the Massachusetts and Pennsylvania Acts.

The Massachusetts and Pennsylvania acts only apply to specific, statutorily defined "devices" or "intercepting devices." Mass. Gen. Laws ch. 272 § 99(B)(3) (defining "intercepting device" under the Massachusetts law as "[a]ny device or apparatus which is capable of transmitting, receiving, amplifying, or recording a wire or oral communication."); 18 Pa. C.S. § 5702 (defining "device" under Pennsylvania law as "[a]ny ***device*** or ***apparatus*** . . . that can be used to intercept a wire, electronic or oral communication.).

Plaintiffs allege that session replay code falls within the relevant definition of each of these statutes. Am. Compl. ¶ 118-120, 143, 173, 214. But software code on a website—which is all that session replay technology is—is not a covered device under either of these acts.

The statutes apply only to an "intercepting device" (Massachusetts) or a "device" (Pennsylvania). The respective statutes each define those terms to only include a "***device*** or ***apparatus***." Mass. Gen. Laws ch. 272 § 99(B)(3); 18 Pa. C.S. § 5702. Interpreting the words of the statute according to "common and approved usage"—as required under Massachusetts and

Pennsylvania law[5]—a "device" or "apparatus" must be tangible; it does not encompass intangible software code on a website. *See* Black's Law Dictionary (11th ed. 2019) (defining "device" as "[a] mechanical invention that may be "an apparatus or an article of manufacture," and defining "apparatus" with reference to "machine," which is defined as "[a] device or apparatus consisting of fixed and moving parts").

Indeed, consistent with these, many courts have held that session replay and similar software are not a "device" or "apparatus" under similar wiretap laws. *See, e.g.*; *Jacome*, 2021 WL 3087860, at *5 (dismissing Florida wiretap claim because session replay software is not a "device or apparatus"); *Cardoso v. Whirlpool Corp.*, 2021 WL 2820822, at *2 (S.D. Fla. July 6, 2021) (same); *cf. United States v. Ackies*, 918 F.3d 190, 199 n.5 (1st Cir. 2019) (rejecting argument that software is a "device" under Federal Stored Communications Act because "software is not a 'device' under its plain meaning"); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 972 (S.D. Cal. 2012) ("[S]oftware is not a tangible good or service.").

As session replay software is not a "device," counts III and V should be dismissed.

### E. Session Replay Data Is Not an "Electronic Communication" under the Pennsylvania Act.

Plaintiffs' claim under the Pennsylvania Act fails for the additional reason that—even if Plaintiffs are correct and session replay code is a "device" under statute, then it is a tracking device. Excluded from the Act's definition of "Electronic communication" is "any communication from a tracking device," which is "an electronic or mechanical device which permits the tracking of the movement of a person or object." 18 Pa. Cons Stat. § 5702. What Plaintiffs define as "Website Communications" are actually her movements on BPS's websites: "mouse movements, clicks,

---

5 *See* Mass. Gen. Laws ch. 4 § 99(B)(3); *Commonwealth v. Hart*, 28 A.3d 898, 908 (Pa. 2011).

keystrokes (such as text being entered into an information field or text box), URLs of web pages visited, and/or other electronic communications in real-time." Am. Compl. ¶ 1.

Thus, even if session replay software is a "device", the Court should find that it is a "tracking device," and that Defendants have not intercepted an "electronic communication." Courts considering Florida's parallel wiretap statute have held that mouse clicks and website commands relate solely to a plaintiff's virtual online movement and are therefore not communications. *Jacome*, 2021 WL 3087860, at *3 (finding software that "tracks a website browser's movements" is "definitionally excluded from the term "'electronic communications'"); *see also Goldstein*, 559 F. Supp. 3d at 1321 (dismissing wiretap claims because the "mere tracking of Plaintiff's movements on Defendant's website is the cyber analog to record[ing] information Defendant could have obtained through a security camera at a brick-and-mortar store.").

## IV. <u>Plaintiffs' Invasion Of Privacy Claims (Counts IV And VI) Should Be Dismissed.</u>

Plaintiffs assert common law claims for intrusion upon seclusion under the laws of Massachusetts (Count IV) and Pennsylvania (Count VI). While the formulation of the elements of these claims vary slightly, when they are applied to Plaintiffs' claims here, at their core, each state requires that Plaintiffs state: (1) an intentional intrusion by Defendants; (2) a reasonable expectation of privacy in their interactions with BPS's website; and (3) that the intrusion into that privacy is objectionable to a reasonable person or highly offensive. *See, e.g.*, *Polay v. McMahon*, 10 N.E.3d 1122, 1126 (Mass. 2014); *Smith v. Unilife Corp.*, 72 F. Supp. 3d 568, 574 (E.D. Pa. 2014). Plaintiffs' do not adequately plead these elements.[6]

[6] Plaintiffs' Pennsylvania claim (Count VI) additionally fails because Plaintiff alleges that a right to privacy is "embodied in . . . the Pennsylvania constitution" but such a right "does not encompass invasions of privacy committed by *private actors*," such as BPS. *Brooks Grp. & Assocs., Inc. v. LeVigne*, 2014 WL 1490529, at *11 & n.72 (E.D. Pa. Apr. 15, 2014).

**A. Plaintiffs Had No Reasonable Expectation of Privacy in Their Mouse Clicks, Mouse Movements, URLs Visited, or Keystrokes.**

Plaintiffs must have a reasonable expectation of privacy in order to bring an intrusion claim. Plaintiffs allege that they had a reasonable expectation of privacy over their interactions with BPS's websites. Am. Compl. ¶¶ 53-58. But this is far from plausible, particularly because they *voluntarily* disclosed that information to Defendants. An intrusion upon seclusion claim requires a matter that is both "entitled to be private *and is kept private by the plaintiff*." *Neal v. United States*, 599 F. Supp. 3d 270, 306 (D. Md. 2022); *see also United States v. Bowers*, 2021 WL 2882438, at *3 (W.D. Pa. July 8, 2021) (no reasonable expectation of privacy in information "when a person is forewarned of the possible disclosure of the information" at issue). To the extent that Plaintiffs' website browsing constitutes communications, the communications are between Plaintiffs and Defendants themselves and were not intended to be private as to Defendants.

Nor *could* Plaintiffs allege that they have a reasonable expectation of privacy over such information—because their Complaint fails to allege that any of the data collected is *personal* to them. The Complaint discusses how session replay software *could* be configured to capture personally identifying information, (*see* Am. Compl. ¶¶ 75), but fails to allege that *BPS's* software had that capability, or even that Plaintiffs provided any personally identifying information that could be captured. Plaintiffs allege only that BPS's session replay software was configured to "provide[] detailed information about website user *sessions, interactions, and engagement*, with the capacity to break down users by device type, location, and [unidentified] other dimensions"—not to collect personally identifying information. Am. Compl. ¶ 85. As another court in this Circuit held, there simply is no "reasonable expectation of privacy over the anonymized data captured by the Session Reply software" that captures "mouse movements, clicks, and keystrokes." *Massie v. General Motors LLC*, 2022 WL 534468, at *2, *5 (D. Del. Feb. 17, 2022) ("Plaintiffs fail to explain

how either [defendant's] possession of anonymized, non-personal data regarding their browsing activities on [a defendant's] website harms their privacy interests in any way."). Courts thus limit reasonable expectations of privacy to matters like intrusions on private communications, the home, or personal movements. *See, e.g.*, *Kline v. Sec. Guards, Inc.*, 386 F.3d 246, 260 (3d Cir. 2004).

Because Plaintiffs do not have a reasonable expectation of privacy in their browsing of BPS's websites, Counts IV and VI should be dismissed.

### B. BPS's Use of Session Replay Software Is Not "Objectionable to a Reasonable Person" and Is Not "Highly Offensive."

Even if Plaintiffs had a reasonable expectation of privacy in their browsing data, the intrusion claims still fail because BPS's use of session replay software is not highly offensive.

As the Third Circuit has explained in addressing technology that tracks website user activity, "the use of cookies for benign commercial purposes has become so widely accepted as part of Internet commerce that it cannot possibly be considered 'highly offensive'"—indeed, "courts have long understood that tracking cookies can serve legitimate commercial purposes." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 294–95 (3d Cir. 2016) (holding that the defendants' decision to use cookies was not "sufficiently offensive, standing alone, to survive a motion to dismiss"); *see also Cook*, 689 F. Supp. 3d at 72 (dismissing invasion of privacy claims based on session replay technology because "the collection and disclosure of a website visitor's activity does not constitute the highly objectionable conduct needed to state a claim").

To state a highly offensive intrusion, far from the allegations at issue here, the invasion must be "***of the sort which would cause mental suffering, shame or humiliation to a person of ordinary sensibilities.***" *Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 122 (W.D. Pa. 2019) (original emphasis) (citing *Chicarella v. Passant*, 494 A.2d 1109, 1114 (1985)); *see also Axford v. TGM Andover Park, LLC*, 2021 WL 681953 (D. Mass. Feb. 22, 2021) ("Intrusion upon

seclusion typically involves unwanted surveillance or other physical invasion…, unwanted contact constituting harassment…, or bodily intrusion such as drug testing.”). The allegations here do not rise to this level. As explained by courts dismissing similar allegations in session replay litigation, “[t]he act of collecting [a website user’s] keystrokes, mouse clicks, and [personal information] is simply not the type of highly offensive act to which liability can attach.” *Popa*, 426 F. Supp. 3d at 122. No matter how “troubled” Plaintiffs may be by the collection of information about their purported website usage, “even well-founded concern is not enough to give rise to tort liability.” *Id.* at 123. Rather, “liability requires conduct that may outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.” *Popa*, 426 F. Supp. 3d at 123.

Plaintiffs baldly claim that BPS’s use of session replay software is “highly objectionable.” Am. Compl. ¶¶ 97, 104, 195, 234. But Plaintiffs fail to explain *why* this is so. And as a matter of law, it is not. BPS’s use of session replay software does not rise to that level. *Popa*, 426 F. Supp. 3d at 123*; see also Nagy v. Bell Telephone Co. of PA*, 436 A.2d 701 (Pa. Super. 1981) (finding that the disclosure to an estranged husband of a list of telephone numbers called from a subscriber's telephone was not highly offensive or objectionable conduct that could lead to tort liability).

Plaintiffs fail to explain how BPS’s session replay software captured any information sensitive or private to them—or anyone else for that matter. It is difficult to fathom how this process could “offend” anyone, let alone a reasonable person, and Plaintiffs’ subjective belief that BPS’s conduct was “unreasonable” is not enough. *Popa*, 426 F. Supp. 3d at 123; *Jones v. Aberdeen Proving Ground*, 2022 WL 1017094, at *20 (D. Md. Apr. 5, 2022). Counts IV and VI fail.

## V. <u>Plaintiffs Fail To State A Claim For Violation Of The CFAA (Count II).</u>

Plaintiffs have not alleged facts sufficient to state a claim under the Computer Fraud and Abuse Act (“CFAA”), which was intended to combat destructive computer hacking, not to disallow standard industry session replay tools. *See Van Buren v. United States*, 141 S. Ct. 1648,

1652 (2021) (noting that the CFAA was enacted following a series of highly publicized hackings); *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1130 (9th Cir. 2009) ("The [CFAA] was originally designed to target hackers who accessed computers to steal information or to disrupt or destroy computer functionality[.]"); *Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962, 965 (D. Ariz. 2008) (finding that the "legislative history supports a narrow view of the CFAA").

To bring a claim under the CFAA, plaintiffs must "plead facts that, if true, establish (1) the elements of the particular substantive (criminal) offense under subsection 1030(a); (2) the plaintiff suffered 'damage or loss' as a result of such a violation; and (3) one of the five types of conduct specified under subsection (c)(4)(A)(i)." *Pipeline Productions, Inc. v. S&A Pizza, Inc.*, 2021 WL4811206, at *5 (W.D. Mo. Oct. 14, 2021) (internal quotation omitted).

As to the first element, Plaintiffs allege that BPS over-extended their authorization to access Plaintiffs' computer and mobile device in violation of 18 U.S.C. § 1030(a). But BPS did not "access" Plaintiffs' computer or mobile devices. BPS's use of session reply captured mouse movement, mouse clicks, and keystrokes on *BPS's* website. *See, e.g.*, Am. Compl. ¶ 63. Indeed, Plaintiffs' allegations are based on BPS's tracking of their conduct on BPS's websites, not Plaintiffs' devices. "[A]n individual 'exceeds authorized access' [under the CFAA] when he accesses a computer—such as files, folders, or databases—that are off limits to him." *Van Buren* 141 S.Ct. at 1662. Plaintiffs do not allege BPS accessed any files, folders or databases on Plaintiffs' devices. Plaintiffs' allegations are therefore insufficient to state a claim under the CFAA.

As to the second element, "the statute defines 'damage' as 'any impairment to the integrity or availability of data, a program a system, or information.'" *Eagle v. Morgan*, 2011 WL 6739448, at *8 (E.D. Pa. Dec. 22, 2011). Courts "have held that to fall within the [CFAA definition of loss], the alleged loss must be related to the impairment or damage to a computer or computer system."

*Id.; Pipeline Productions,* 2021 WL 4811206, at *5. "Accordingly, Courts have held that merely copying data from a computer—as distinguished from damaging the data on, or removing the data from, the computer—does not constitute damage within the meaning of the [CFAA]." *Id.*

Here, Plaintiffs do not allege that their computer was impacted. Plaintiffs merely allege that their actions on BPS's websites should not have been captured. However, capturing or copying Plaintiffs' mouse movements, clicks, keystrokes, and page visits is insufficient to constitute "damage or lost" under CFAA. *See In re Ahern Rentals, Inc. Trade Secret Litig.*, 2021 WL 5756421, at *4 (W.D. Mo. Aug. 27, 2021) ("In short, merely accessing, looking at, or copying data or information does not damage or impair the data or information"). Plaintiffs thus do not bring a viable CFAA claim.

**VI. <u>Plaintiffs' Stated Conversion Claims Fail (Counts VII and VIII).</u>**

The elements of trespass to chattels and conversion are "essentially the same." *Rosemont Taxicab Co. v. Philadelphia Parking Auth.*, 327 F. Supp. 3d 803, 828 (E.D. Pa. 2018). "The difference is that conversion entails a more serious deprivation of the owner's rights such that an award of the full value of the property is appropriate." *Id.* To state a viable claim for trespass to chattel, there must be an intentional intermeddling with a chattel in the possession of another that causes injury. *See Rosemont Taxicab.*, 327 F. Supp. 3d at 828. Plaintiffs here fail to state a claim for even the less significant deprivation of an owner's rights to state a claim for trespass to chattel, much less the more extreme tort of conversion, requiring dismissal of Counts VII and VIII.

"Intermeddling" requires a *physical* interference. *See e.g.*, *Rosemont*, 327 F. Supp. 3d at 828, n. 16 (quoting the Restatement (Second) of Torts § 217, cmt (E) (1965)). "[T]here must be a disturbance of plaintiff's possession, which … may be done by an actual taking, a physical

seizing …, removal from their owner, or by exercising a control or authority over them inconsistent with their owner's possession." *Pope v. Cordell*, 47 Mo. 251, 252 (1871) (citation omitted).

The Complaint alleges that BPS interfered with Plaintiffs' "devices" and used or possessed the "data contained on Plaintiffs' devices." Am. Compl. ¶¶ 264-66. As an initial matter, multiple courts have found that Plaintiffs' "data" is not "property." *See, e.g.*, *Gardiner v. Walmart Inc.* 2021 WL 2520103, at *8 (N.D. Cal. Mar. 5, 2021). But even if Plaintiffs' data qualifies as the type of "property" that can give rise to a conversion or trespass claim, Plaintiffs still fail to allege that BPS physically interfered with that property. In fact, Plaintiffs merely states that the session replay "intercepted" "communications" from Plaintiffs' devices to BPS's website. *See, e.g.*, Am. Compl. ¶ 112. Plaintiffs further allege that their mouse movement, clicks, and key strokes were "recorded" from BPS's websites via the session replay software and stored directly on BPS's servers. *See* Am. Compl. ¶¶ 121. But Plaintiffs do not allege BPS physically touched or possessed Plaintiffs' "devices", or "data" in any way. Absent plausible allegations that BPS intermeddled with Plaintiffs' devices or data—these counts fail.

Moreover, Plaintiffs do not allege any facts that establish the requisite intent. Plaintiffs must allege that BPS acted "for the purpose of using or otherwise intermeddling with a chattel or with knowledge that such an intermeddling will, to a substantial certainty, result from the act." *Foremost Ins. Co. v. Pub. Serv. Comm'n of Mo.*, 985 S.W.2d 793, 797 (Mo. Ct. App. 1998); *see also QVC, Inc. v. Resultly, LLC*, 159 F. Supp. 3d 576, 600 (E.D. Pa. 2016) (dismissing claims for conversion and trespass to chattel under Pennsylvania law for failure to allege facts supporting the requisite intent). They do not do so.

## CONCLUSION

For these reasons, Plaintiffs' Complaint should be dismissed in its entirety.

Dated: August 17, 2026

Respectfully submitted,

By: /s/ *Jennifer A. McLoone*

Jennifer A. McLoone (admitted *pro hac vice*)
**Shook, Hardy & Bacon L.L.P.**
201 South Biscayne Boulevard
Suite 3200
Miami, FL 33131-4332
Phone: (305) 358-5171
Fax: (305) 358-7470
jmcloone@shb.com

Erin (Loucks) Leffler (PA ID No. 204507)
**Shook, Hardy & Bacon L.L.P.**
Two Commerce Square
2001 Market St., Suite 3000
Philadelphia, PA 19103
Phone: (215) 278-2555
Fax: (215) 278-2594
eleffler@shb.com

Maveric Ray Searle (admitted *pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
111 South Wacker Drive, Suite 4700
Chicago, IL 60606
Phone: (312) 704-7741
Fax: (312) 558-1195
E-Mail: msearle@shb.com

***Counsel for Defendants***