**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: BPS DIRECT, LLC and CABELA'S, LLC, WIRETAPPING** | **MDL NO. 3074**<br>**2:23-md-03074-MAK** |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS


INTRODUCTION AND PROCEDURAL HISTORY .... 1

FACTUAL BACKGROUND .... 2

ARGUMENT .... 3

I. Plaintiffs Adequately Plead Article III Standing. .... 3

A. BPS Captured Plaintiffs' Payment Information Using SRC. .... 3

B. Plaintiffs Have Standing To Pursue Injunctive Relief. .... 5

II. Plaintiffs Adequately Plead Their Wiretap Claims .... 6

A. Plaintiffs Adequately Allege Interception of "Contents" under the Federal, Massachusetts, and Pennsylvania Acts. .... 6

B. The Party Exception under the Federal Act does not Preclude Liability. .... 8

C. Plaintiffs' Communications Were Intercepted Contemporaneously with Transmission. .... 9

D. Session Replay Code Is a "Device" under Massachusetts and Pennsylvania Law. .... 10

E. Session Replay Code Is Not a Tracking Device Under the Pennsylvania Act. .... 11

III. Plaintiffs Sufficiently Plead Claims for Invasion of Privacy. .... 12

A. Plaintiffs had a Reasonable Expectation of Privacy. .... 13

B. Defendants' Conduct Is Highly Offensive. .... 15

IV. Plaintiffs State a Viable Computer Fraud and Abuse Act ("CFAA") Claim. .... 16

V. Plaintiffs Adequately State their Conversion Claims (Counts VII and VIII). .... 19

CONCLUSION .... 20

# TABLE OF AUTHORITIES

## Cases

*Adair v. Cigna Corp. Servs., LLC*,
818 F. Supp. 3d 641 (E.D. Pa. 2026) .......... 5, 6

*Alhadeff v. Experian Info. Sols., Inc.*,
541 F. Supp. 3d 1041 (C.D. Cal. 2021) .......... 7

*Alves v. BJ's Wholesale Club, Inc.*,
2023 WL 4456956 (Mass. Sup. Ct. June 21, 2023) .......... 7, 11, 15

*Boddie v. ABC*,
881 F.2d 267 (6th Cir. 1989) .......... 9

*Bowens v. Aftermath Ent.*,
254 F. Supp. 2d 629 (E.D. Mich. 2003) .......... 9

*Byars v. Goodyear Tire & Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023) .......... 7

*Com. v. Deck*,
954 A.2d 603 (Pa. Super. Ct. 2008) .......... 12

*Commonwealth v. Glass*,
200 A.3d 477 (Pa. Super. Ct. 2018) .......... 12

*Commonwealth v. Smith*,
136 A.3d 170 (Pa. Super. 2016) .......... 11

*Cook v. GameStop, Inc.*,
148 F.4th 153 (3d Cir. 2025) .......... 15

*Creative Dimensions in Mgmt., Inc. v. Thomas Grp., Inc.*,
1999 WL 225887 (E.D. Pa. Apr. 16, 1999) .......... 19

*Delong v. PHE, Inc.*,
2026 WL 2075564 (E.D. Pa. July 16, 2026) .......... 15

*Deteresa v. Am. Broad. Companies, Inc.*,
121 F.3d 460 (9th Cir. 1997) .......... 9

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 10

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 14

*FMHUB, LLC v. MuniPlatform, LLC*,
2021 WL 1422873 (D.N.J. Apr. 15, 2021) .......... 18

*Garcia v. Yeti Coolers, LLC*,
2023 WL 5736006 (C.D. Cal. Sep. 5, 2023) .......... 10

*Harris by Harris v. Easton Pub. Co.*,
483 A.2d 1377 (Pa. Super. Ct. 1984) .......... 13

*Hazel v. Prudential Fin., Inc.*,
2023 WL 3933073 (N.D. Cal. June 9, 2023) .......... 16

*In re Application for an Ord. Authorizing the Extension & Use of a Pen Reg. Device*,
2007 WL 397129 (E.D. Cal. Feb. 1, 2007) .......... 12

*In re BPS Direct, LLC*,
175 F.4th 423 (3d Cir. 2026) .......... Passim

*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) .......... 9

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) .......... Passim

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016) .......... 15

*In re Smartphone Geolocation Data Application*,
977 F. Supp. 2d 129 (E.D.N.Y. 2013) .......... 11

*India Price v. Carnival Corp.*,
712 F. Supp. 3d 1347 (S.D. Cal. 2024) .......... 7, 13

*Laborde v. Mount Airy Casino*,
2016 WL 7735566 (M.D. Pa. Oct. 28, 2016) .......... 5

*Massie v. General Motors LLC*,
2022 WL 534468 (D. Del. Feb. 17, 2022) .......... 14

*Neal v. United States*,
599 F. Supp. 3d 270 (D. Md. 2022) .......... 14

*NRA Grp., LLC v. Durenleau*,
154 F.4th 153 (3d Cir. 2025) .......... 17

*Oliver v. Noom, Inc.*,
2023 WL 8600576 (W.D. Pa. Aug. 22, 2023) .......... 8

*Pestco, Inc. v. Associated Products, Inc.*,
880 A.2d 700 (Pa. Super. 2005) .......... 19

*Polay v. McMahon*,
10 N.E.3d 1122 (2014) .......... 12, 13, 16

*Popa v. Harriet Carter Gifts, Inc.*,
426 F. Supp. 3d 108 (W.D. Pa. 2019) .......... 8, 12

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 15

*QVC, Inc. v. Resultly, LLC*,
159 F. Supp. 3d 576 (E.D. Pa. 2016) .......... 19

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 7

*Rich v. Rich*,
2011 WL 3672059 (Mass. Super. July 8, 2011) .......... 11

*Ryanair DAC v. Booking Holdings Inc.*,
636 F. Supp. 3d 490 (D. Del. 2022) .......... 18, 19

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .......... 7

*Spangenberg-Dana v. Auto. Ins. Co. of Hartford, CT*,
2026 WL 561125 (E.D. Pa. Feb. 27, 2026) .......... 4

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 4

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) .......... 6

*Sussman v. Am. Broad. Cos., Inc.*,
186 F.3d 1200 (9th Cir. 1999) .......... 8, 9

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 3, 5

*United States v. Barrington*,
648 F.3d 1178 (11th Cir. 2011) .......... 10

*United States v. Hutchins*,
361 F. Supp. 3d 779 (E.D. Wis. 2019) .......... 10

*United States v. Szymuszkiewicz*,
622 F.3d 701 (7th Cir. 2010) .......... 10

*Van Buren v. United States*,
593 U.S. 374 (2021) .......... 16, 17, 18

*Vonbergen v. Liberty Mut. Ins. Co.*,
705 F. Supp. 3d 440 (E.D. Pa. 2023) .......... 11, 12

*Wendover Prods., LLC v. PayPal Inc.*,
2026 WL 1799239 (N.D. Cal. June 22, 2026) .......... 17, 18, 19

*Zarif v. Hwareh.com, Inc.*,
789 F. Supp. 3d 880 (S.D. Cal. 2025) .......... 7

**Statutes**

18 Pa. C.S. § 5702 .......... 6

18 U.S.C. § 1030(a) .......... 16

18 U.S.C. § 1030(e) .......... 18

18 U.S.C. § 2510 .......... 6, 11

18 U.S.C. § 3117(b) .......... 11

18 U.S.C.A. § 2511(2)(d) .......... 8

Mass. Gen. Laws ch. 214 § 1B .......... 12

**Other Authorities**

Restatement (Second) of Torts § 217 (1965) .......... 19

Restatement (Second) of Torts § 222 (1965) .......... 19

Restatement (Second) of Torts § 652B (1977) ................................................................ 13

## INTRODUCTION AND PROCEDURAL HISTORY

The Third Circuit has already concluded that Plaintiffs Heather Cornell and Peter Montecalvo ("Plaintiffs") alleged injuries are directly analogous to those vindicated by the intrusion-upon-seclusion tort. Thereafter, the Court properly concluded that those Plaintiffs have standing to bring claims that Defendants BPS Direct, LLC and Cabela's Direct, LLC (collectively "BPS") embedded Session Replay Code ("SRC") in their websites, allowing their SRC providers ("Providers") to surreptitiously record Plaintiffs' billing and payment information without consent. *In re BPS Direct, LLC*, 175 F.4th 423, 434 (3d Cir. 2026). The Third Circuit further held that the harm arises when a defendant has "invaded a private seclusion that the plaintiff has thrown about his person or affairs" and remanded for further proceedings. *Id.* at 432.

Upon receipt of the Mandate, this Court ordered (ECF 40) Plaintiffs to file a Second Consolidated Amended Complaint ("Compl."), which Plaintiffs did on July 15, 2026. Defendants now move to dismiss that Complaint under Rule 12(b)(1) and 12(b)(6), suggesting that the term "payment information" that Plaintiffs entered on Defendants' websites does not constitute a "complete credit card or debit card number" and that Plaintiffs therefore fail to establish standing. ECF 112-1 (Memorandum; hereinafter "Mem.") at 1. But the Third Circuit already found standing based on allegations that the Providers surreptitiously recorded Plaintiffs' "billing and payment information" absent consent. *See BPS*, 175 F.4th at 434. And Plaintiffs sufficiently plead they entered their names, addresses, payment and billing information into form fields during the checkout process. Compl. ¶¶ 93, 100.

Plaintiffs need not revise their allegations to match Defendants' preferred nomenclature, because the allegations as written already suffice for Article III standing under the Third Circuit's binding mandate which states: "'payment and billing information' refers to a complete credit card

or debit card number, along with the card's expiration date and security code (hereinafter, "complete credit card or debit card number")." *Id*. Common sense dictates as much: "[a]fter all, [Plaintiffs] Cornell and Montecalvo entered their 'payment and billing information' to *make purchases* on BPS's websites, and online purchases typically require a complete credit or debit card number to finalize the transaction." *Id.*

Now, BPS brings a factual challenge to standing, going outside of the Complaint to rely on a 2023 declaration of their Senior Manager of E-Commerce submitted in opposition to Plaintiffs' Motion to Compel. ECF 76-1. BPS contends this declaration establishes that BPS's session replay software was configured so that payment card information was never sent to Providers. Mem. at 3. BPS is wrong. The manager only avers that "payment information" "is masked and not transmitted to Quantum Metric or Bass Pro/Cabela's." *See* ECF 76-1 ¶ 9.[1] This purported factual challenge fails because Plaintiffs plead not only that Quantum Metric collects Plaintiffs' payment card information, but that Microsoft Corporation ("Microsoft") and Mouseflow (two other Providers used by BPS) also collect Plaintiffs' and Class Members' electronic communications, including unmasked personal, financial, billing and purchase information. Compl. ¶¶ 64-65, 106-108. Defendants' Motion should be denied in its entirety.

## FACTUAL BACKGROUND

BPS and Cabela's intentionally procured and paid Microsoft, Quantum Metric, and Mouseflow to embed Session Replay Code on their websites to intercept and record Plaintiffs' and Class Members' electronic communications Compl. ¶¶ 3, 84. When users visit Defendants'

---

[1] BPS wrongly asserts the manager's testimony is unrebutted. The Complaint plausibly alleges that BPS does not utilize any masking configuration settings and transmits all data to Providers who store the raw event data and have the ability to interpret and replay the data. Compl. ¶¶ 64-65.

websites, the SRC contemporaneously transmits duplicated "Event" data, to the servers of SRC Providers Microsoft, Quantum Metric, and Mouseflow capturing virtually every user action, including mouse movements, clicks, keystrokes, and text entries and sends them to the Providers' servers. *Id*. ¶¶ 62-63. These communications collected by Providers include personal, financial, billing and purchase information entered by Plaintiffs and Class Members. *Id.* ¶¶ 106–08.

Defendants transmit the contents of their website communications, including billing and payment information directly to the Providers. Compl. ¶ 64. The Providers store the raw and unmasked data and reproduce it as a video reenactment of each user's session; unlike aggregate analytics, "these scripts are intended for the recording and playback of individual browsing sessions," and the raw and unmasked data remains in the Providers' custody and control. *Id*. ¶ 65.

Plaintiff Cornell purchased a chair and input her name, address and payment and billing information into the form fields during the checkout process. *Id.* ¶¶ 93–94. Plaintiff Montecalvo made multiple purchases, and input the same categories of personal information. *Id.* ¶¶ 100-101. Both Plaintiffs reasonably expected their visits to be private and did not consent to third-party recording of their data, and as a result, have suffered concrete injuries from Defendants' collection, aggregation and use of Plaintiffs' personal browsing histories without consent. *Id.* ¶¶ 97, 104.

## ARGUMENT

### I. Plaintiffs Adequately Plead Article III Standing.

#### A. BPS Captured Plaintiffs' Payment Information Using SRC.

Plaintiffs have Article III standing. BPS collected their payment information—an injury the Third Circuit has already recognized as analogous to the intrusion-upon-seclusion tort. *See BPS*, 175 F.4th at 433–34; *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (explaining intangible harms are concrete if "the alleged injury to the plaintiff has a 'close relationship' to a

harm 'traditionally' recognized as providing a basis for a lawsuit in American courts" (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)).

In arguing that Plaintiffs needed to revise their allegations to establish standing, BPS misreads the Third Circuit's opinion. The Third Circuit did not hold that Plaintiffs failed to allege a concrete harm and could not do so until adding the magic words "complete debit or credit card numbers" to the Complaint. Rather, the Third Circuit held that Plaintiffs "have standing based on their allegations that BPS embedded SRC in its websites, allowing the [session replay] Providers to surreptitiously record their billing and payment information absent consent." *See BPS*, 175 F.4th at 434.

BPS relies on a declaration outside of the Complaint to proclaim it never transmitted credit card information via SRC. *See* Mot. at 6 (citing ECF No. 76-1, Cadmus Dec.). The Cadmus Declaration pertains only to *one* Provider – Quantum Metric; it does not address the functionality of either Microsoft or Mouseflow, both of which Plaintiffs also allege Defendants employ across their websites. *See generally* ECF No. 76-1, Cadmus Dec.; *see also, e.g.*, Compl. ¶¶ 1–2, 84, 87, 89, 106–07, 109–10, 112, 146. In particular, Plaintiffs assert that *both* Microsoft and Mouseflow intercepted their payment details. *Id.* ¶¶ 68, 93, 100, 172. The Cadmus Declaration does not rebut those well-pleaded allegations, and the Court must credit Plaintiffs' complaint. *See Spangenberg-Dana v. Auto. Ins. Co. of Hartford, CT*, 2026 WL 561125, at *1 (E.D. Pa. Feb. 27, 2026) ("When considering a motion to dismiss, this Court must accept as true all relevant and pertinent factual allegations in the complaint and construe these facts in the light most favorable to the plaintiff.").

Further, as to Quantum Metric, the Cadmus Declaration provides scant details, giving little to no description of the process by which it purportedly blocks and masks payment information. *See* ECF No. 76-1, Cadmus Dec. ¶ 9. And it leaves open several relevant questions: for example,

was the masking procedure in place during the entirety of the class period? Was payment information masked as an individual typed out her card number, or only once the card number appeared in its entirety in the form field? A negative answer to either question means that Quantum Metric still received payment information despite Defendants' so-called masking effort. Additionally, the Cadmus Declaration states that "session metadata exists for sessions back to 2019;" it is unclear whether that metadata would include payment information of the type Plaintiffs allege here. *See* ECF No. 76-1, Cadmus Dec. ¶ 15. Given the factual questions raised by the Complaint and unanswered by the Declaration, the Court should deny the Motion and permit jurisdictional discovery so that the parties may test each other's factual assertions rather than resolve disputed facts on a one-sided paper record. *Cf. Laborde v. Mount Airy Casino*, 2016 WL 7735566, at *8 (M.D. Pa. Oct. 28, 2016), *report and recommendation adopted*, 2017 WL 114085 (M.D. Pa. Jan. 11, 2017) ("At bottom, this presents a factual dispute that should be tested through discovery . . . .").

**B. Plaintiffs Have Standing To Pursue Injunctive Relief.**

For Article III standing on their injunctive-relief claims, Plaintiffs must show an "expos[ure] to a risk of future harm" that is "sufficiently imminent and substantial." *TransUnion*, 594 U.S. at 435. Plaintiffs meet that standard here as BPS continues to employ SRC on its websites, so Plaintiffs will experience the same harm as soon as they visit the website again. Compl. ¶¶ 45–46. Moreover, BPS stored the Session Replay Data it collected on Plaintiffs, and can still revisit and analyze the Private Information it collected at any time. *Id.* ¶¶ 85, 86, 90, 201, 240. Defendants admit that, "[a]s of October 31, 2023, there were over 353 million replays available within Quantum Metric's system" alone. *See* ECF 76-1, Cadmus Dec. ¶ 14. Plaintiffs thus face a harm that has a "'substantial risk of occurring.'" *Adair v. Cigna Corp. Servs., LLC*, 818 F. Supp. 3d 641,

667 (E.D. Pa. 2026) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). That risk is enough for Plaintiffs to seek injunctive relief here. *See id.* (finding Plaintiffs had standing to seek injunctive relief based on risk that "ongoing or future interactions with Defendants' website" would result in the "intercept[ion] and disclos[ure] of insureds' communications").

## II. Plaintiffs Adequately Plead Their Wiretap Claims

### A. Plaintiffs Adequately Allege Interception of "Contents" under the Federal, Massachusetts, and Pennsylvania Acts.

Despite the wiretapping statutes' broad definitions of "contents" of an electronic communication, Defendants contend the communications captured by tracking technologies here do not contain "content." Mot. at 7–9. In support of their argument, Defendants overlook an array of case law—including precedential law from the Third Circuit—that is directly on point. The information collected by the tracking technologies procured and deployed by Defendants constitute "contents" under these statutes, as numerous courts have recognized.

The wiretapping statutes broadly define "contents" as "*any* information concerning the substance, purport, or meaning" of a communication.[2] 18 U.S.C. § 2510(8); 18 Pa. C.S. § 5702; Mass. Gen. Laws ch. § 272 (emphasis added). Applying this expansive definition, the Third Circuit has held that "[i]f an address, phone number, or URL is instead part of the substantive information conveyed to the recipient, then by definition it is 'content.'" *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 137 (3d Cir. 2015) ("*Google I*"). Indeed, "[t]he line between contents and metadata is not abstract but contextual with respect to each communication." *Id.* In reaching its decision in *Google I*, the Third Circuit found "that routing information and content are not mutually exclusive categories. And between the information revealed by highly detailed URLs

---

[2] "Contents" is defined consistently across all relevant jurisdictions to which this argument applies.

. . . we are persuaded that—at a minimum—some queried URLs qualify as content." *Google I*, 806 F.3d at 138–39.

If a queried URL qualifies as content, this Court should also conclude that Plaintiffs sufficiently alleged Defendants procured the interception of the contents of their communications. Plaintiffs allege that Defendants' tracking technologies captured not only technical identifiers such as browser characteristics, but also products viewed, pages and content clicked on and viewed, and their specific mouse movements, form and text submissions, and other browsing activity on product pages. Compl. ¶¶ 1, 63, 66, 117, 142. An example of what content is captured during a typical website visit is contained in the screenshots of Paragraphs 109 and 110 of the Complaint: (i) the product viewed—"Vortex Diamondback HD Binoculars in TrueTimber Strata;" and (ii) the location of the viewer's store—"3501 paxton st" in "Harrisburg." That same Code was running during Plaintiffs' visit, capturing the same type of content when they viewed products and browsed the Website. *Id.* ¶¶ 105–07, 112–13. These allegations go well beyond technical metadata and constitute "contents" of a communication under the wiretapping statutes, as countless courts have found in analogous online wiretapping cases. *See, e.g.*, *Alves v. BJ's Wholesale Club, Inc.*, 2023 WL 4456956, at *4 (Mass. Sup. Ct. June 21, 2023) ("keystrokes, clicks, mouse movements, URLs, and other data" considered "content"); *Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020 (C.D. Cal. 2023) (denying defendant's motion to dismiss); *India Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1361 (S.D. Cal. 2024) (same); *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 894 (S.D. Cal. 2025) (same, applying Federal Wiretap Act); *Alhadeff v. Experian Info. Sols., Inc.*, 541 F. Supp. 3d 1041, 1045 (C.D. Cal. 2021) (same); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 518 (C.D. Cal. 2021) (same, applying California wiretap act); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *1 (N.D. Cal. Oct. 23, 2019) (same). Thus, the 'content' at issue here (credit

card numbers, billing info) is substantively different from general browsing data, and the Third Circuit has recognized payment information as sufficiently sensitive to constitute a cognizable privacy harm. *See BPS*, 175 F.4th at 434.

The precise nature of what the third parties captured from Plaintiffs' and Class members' sessions—including what was entered into form fields, what search queries were transmitted, and what subpage-level URL information was shared—cannot be resolved without discovery into the actual operation of those tracking technologies on Defendants' website during the relevant period. *See Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 119 (W.D. Pa. 2019); *Oliver v. Noom, Inc.*, 2023 WL 8600576, at *7 (W.D. Pa. Aug. 22, 2023). Plaintiff should be afforded the opportunity to develop the factual record before the Court resolves any question about whether the tracking technologies here constitute "contents" under the wiretapping statutes.

**B. The Party Exception under the Federal Act does not Preclude Liability.**

Defendants argue that, because they were the intended recipients of Plaintiffs' communications, they are not liable for the recording of Plaintiffs' communications. Mot. at 9–11. But because Defendants facilitated the interception of Plaintiffs' communications with the intent to use that information in violation of Plaintiffs' privacy and property rights and in furtherance of unfair competition and business practices, the "party exception" does not apply.

The Federal Wiretap Act does not recognize the party exception when the interception is made for a "criminal or tortious" purpose. 18 U.S.C.A. § 2511(2)(d). While a defendant must intend to commit the criminal or tortious act, a concurrent "lawful purpose" does not "sanitize" a wiretap also "made for an illegitimate purpose." *Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999). In analyzing whether the interception was in furtherance of a criminal or tortious act, a court looks not to the means of interception (*i.e.*, not whether the interception was

prohibited), but the reason for undertaking the interception (*i.e.*, what the defendant intended to gain from the interception). *See In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 516 (S.D.N.Y. 2001) (citing *Sussman*, 186 F.3d at 1202). "It is the use of the interception with *intent to harm* rather than the fact of interception that is critical to liability." *Boddie v. ABC*, 881 F.2d 267, 270 (6th Cir. 1989). Accordingly, the party exception cannot be applied, as a matter of law, where the plaintiff alleges the interception was conducted "for the purpose of invading her privacy[.]" *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d at 516 (quoting *Deteresa v. Am. Broad. Companies, Inc.*, 121 F.3d 460, 467 n.4 (9th Cir. 1997)).

Here, Plaintiffs have alleged exactly that Defendants intended to invade Plaintiffs' privacy rights and reappropriate their information to Defendants' own pecuniary benefit. Comp. ¶¶ 25, 43, 84, 145, 149–50. Defendants realize this pecuniary benefit by sending targeted advertisements to Plaintiffs and by using their information to glean valuable performance and analytical insights into their online presence. *Id.* ¶¶ 25, 29, 145, 151. Plaintiffs also allege this practice constitutes unfair competition, which injures both themselves and Defendants' competitors. Because Plaintiffs have alleged that Defendants facilitated the interception for the purpose of invading their privacy, committing unfair business practices, and converting their personal and private information to Defendants' own pecuniary benefit, they have satisfied their burden at the pleading stage. *See Bowens v. Aftermath Ent.*, 254 F. Supp. 2d 629, 644 n.5 (E.D. Mich. 2003) ("So long as Plaintiffs have alleged at least one 'tortious purpose,' the prior consent exception is not available to Defendants as grounds for dismissal.").

### C. Plaintiffs' Communications Were Intercepted Contemporaneously with Transmission.

Misconstruing the well-pleaded allegations in the Complaint, Defendants argue that Plaintiffs fail to allege contemporaneous "interception" under the Pennsylvania and Massachusetts

wiretapping statutes. Mem. 11-12. But the Complaint specifically and sufficiently alleges how the SRC procured and employed by Defendants "contemporaneously" intercepts virtually every user action with Defendants' websites. *See, e.g.*, Compl. ¶¶ 5, 62, 174, 177, 214.

To support their argument, Defendants rely on a misreading of a single, cherry-picked allegation in the Complaint. Mot. at 12 (quoting Compl. ¶ 63). Defendant argues that "interval" transmission necessarily precludes contemporaneous interception of these communications. *Id*. In fact, the "hyper-frequent intervals" are contemporaneous and transmitted "milliseconds apart" "throughout the user's website session, rather than after the user's visit to the website is completely finished." Compl. ¶ 68. Sending bits in sequenced intervals is how electronic data is *always* transmitted between computers, it does not mean the interception alleged by Plaintiffs was non-contemporaneous. *See, e.g.*, *Garcia v. Yeti Coolers, LLC*, 2023 WL 5736006, at *5 (C.D. Cal. Sep. 5, 2023) (allegations of interception "in real time" and details on how it occurs sufficient at the pleadings stage); *see also United States v. Szymuszkiewicz*, 622 F.3d 701, 706 (7th Cir. 2010).

**D. Session Replay Code Is a "Device" under Massachusetts and Pennsylvania Law.**

Defendants argue that Plaintiffs' claims should be dismissed because software cannot be a device under the Massachusetts and Pennsylvania wiretapping acts. Defendants' argument fails for two reasons. First, contrary to Defendants' hyper-technical statutory reading, "device" is not limited to something tangible. Second, courts have routinely found that software can be a device for purposes of a wiretapping statute. *See, e.g.*, *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1080 (N.D. Cal. 2023) (finding that software embedded on a website, the Meta Pixel, is a device under CIPA); *United States v. Hutchins*, 361 F. Supp. 3d 779, 795 (E.D. Wis. 2019) ("Section 2510(5)'s reference to 'mechanism,' which is commonly defined as a 'process, technique, or system for achieving a result' seems to encompass software."); *United States v. Barrington*, 648 F.3d 1178, 1203, (11th Cir. 2011) (accepting keylogger software as a "device" under Federal

Wiretap Act). Additionally, Plaintiffs allege that the SRC alters the operation of Plaintiffs' phones and computers, which are themselves tangible devices. Compl. ¶¶ 174, 214.

Both Massachusetts and Pennsylvania courts have rejected Defendants' narrow reading of "device" under the relevant statutes and affirmed it includes software. *See BJ's Wholesale Club*, 2023 WL 4456956, at *5; *Rich v. Rich*, 2011 WL 3672059 at *6 (Mass. Super. July 8, 2011) (key logger software was an intercepting device because it could record wire communications); *see also Commonwealth v. Smith*, 136 A.3d 170, 178 (Pa. Super. 2016) (software app on smartphone is an interception "device" under the WESCA); *Vonbergen v. Liberty Mut. Ins. Co.*, 705 F. Supp. 3d 440, 456 (E.D. Pa. 2023) ("[M]any courts to have considered the issue agree that software can constitute a 'device' under the Pennsylvania Wiretap Act and similar anti-wiretapping statutes[.]").

The plain language of the statutes and the relevant case law forecloses Defendants' attempt to limit the definition of a "device" under Massachusetts and Pennsylvania law to something tangible, and this Court should reject them as well.

**E. Session Replay Code Is Not a Tracking Device Under the Pennsylvania Act.**

Defendants argue that even if SRC is deemed a "device" under WESCA, it is a "tracking device" and therefore exempt from WESCA's prohibitions. This is an improper reading of "tracking device." Federal courts analyzing an identical definition of "tracking device" under the Federal Wiretap Act (18 U.S.C. § 2510(12)(C); 18 U.S.C. § 3117(b)) have concluded the term merely "incorporated the then-common understanding of tracking device, to wit: a device designed and intended to perform a law enforcement function of tracking an automobile, person or item after being 'placed' by agents." *In re Smartphone Geolocation Data Application*, 977 F. Supp. 2d 129, 149 (E.D.N.Y. 2013). Put differently, a "tracking device" contemplates devices of the "beeper" variety, *i.e.*, "one-way radio communication devices that emit a signal on a specific radio

frequency." *In re Application for an Ord. Authorizing the Extension & Use of a Pen Reg. Device*, 2007 WL 397129, at *2 (E.D. Cal. Feb. 1, 2007). Because WESCA was modeled after the Federal Wiretap Act, this Court can look to federal courts' interpretation of "tracking device." *Com. v. Deck*, 954 A.2d 603, 607 (Pa. Super. Ct. 2008). Applying this definition, it is clear that SRC—which is software that captures and collects content of communications—is not a physical tracking device used to track cars, persons, or items. *See Commonwealth v. Glass*, 200 A.3d 477, 488 (Pa. Super. Ct. 2018).

The Florida cases Defendants rely on are unpersuasive and have already been rejected by Pennsylvania courts. *See Vonbergen*, 705 F. Supp. 3d at 458. "Exceptions to WESCA's definition of 'devices' must be construed narrowly and none of them seemingly apply here." *Harriet Carter*, 426 F. Supp. 3d at 117.

## III. Plaintiffs Sufficiently Plead Claims for Invasion of Privacy.

Plaintiffs assert claims for intrusion upon seclusion under the common law of Massachusetts[3] and Pennsylvania. Compl. ¶¶ 182–203, 223–42. Defendants collected Plaintiffs' personal and financial information including their names, addresses, and payment and billing information. Compl. ¶¶ 93–94, 100–01. Defendants configured the SRC on their website to "indiscriminately capture[] the maximum range of data and information, including highly sensitive and personal information." *Id.* ¶¶ 191, 230. Thus, contrary to Defendants' claims, the information

[3] Massachusetts has codified the common law right to be free from invasions of privacy in Mass. Gen. Laws ch. 214 § 1B. *Polay v. McMahon*, 10 N.E.3d 1122, 1126 (2014) ("[A] plaintiff . . . may support a claim of invasion of privacy by showing that a defendant has intruded unreasonably upon the plaintiff's 'solitude' or 'seclusion.' The right which the plaintiffs claim was infringed upon is their right to be left alone.") (internal citations and quotations omitted).

at issue is not anonymous browsing data. *See Carnival Corp.*, 712 F. Supp. 3d at 1363 (sustaining invasion of privacy claims in a similar case).

The pleading requirements of an invasion of privacy claim under Massachusetts and Pennsylvania law are essentially the same: (1) the offensive nature of the intrusion; and (2) the protected privacy interest infringed. *See* Restatement (Second) of Torts § 652B (1977) ("One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."). Plaintiffs plead allegations sufficient to show they had a reasonable expectation of privacy, and Defendants facilitated an intrusion into that privacy that was highly offensive. *See Polay*, 10 N.E.3d at 1126; *Harris by Harris v. Easton Pub. Co.*, 483 A.2d 1377, 1383 (Pa. Super. Ct. 1984).

**A. Plaintiffs had a Reasonable Expectation of Privacy.**

Defendants argue Plaintiffs have no reasonable expectation of privacy in information Plaintiffs shared on their websites. Mot. at 14–15. Defendants are wrong, as Plaintiffs alleged they had a reasonable expectation of privacy in the personal and financial information they typed into Defendants' websites. Plaintiffs never shared their payment and billing information with third parties at all: instead, they entered it into checkout form fields for the sole purpose of completing a transaction with Defendants, not to be transmitted to undisclosed SRC Providers. Compl. ¶¶ 93–94, 100–01, 192, 231. Defendants also ignore the pleadings concerning information not intentionally shared: the SRC captured keystrokes typed but never submitted, *id.* ¶ 69, and enabled SRC Providers to build device "fingerprints" from users' computer settings and browser configurations—collected across every monitored site—that could then be linked to a user's identity and used to reconstruct their complete browsing history, *id.* ¶¶ 74–75. Plaintiffs had a

reasonable expectation of privacy in all this information, which they did not intend to share with any third party. Plaintiffs were not presented with any pop-up disclosure, consent form, or privacy policy alerting them that their visit to the website was being recorded and transmitted to a third party. *Id.* ¶¶ 96, 103.

The Third Circuit recognizes this distinction and previously held that users whose credit or debit card numbers were captured constituted an invasion of privacy that constitutes a cognizable privacy harm. *See BPS*, 175 F.4th at 432 ("[T]he kind of harm vindicated by the intrusion-upon-seclusion tort is relatively broad …When the harm is based on an intrusion into a plaintiff's affairs, those affairs must (at least plausibly) be private.")

Defendants' cited cases are factually distinguishable as they concern only anonymized, non-financial data. *See Massie v. General Motors LLC*, 2022 WL 534468, at *5 (D. Del. Feb. 17, 2022) (holding there is no reasonable expectation of privacy in "anonymized, non-personal data" while saying nothing about payment information captured during a checkout transaction.); *Neal v. United States*, 599 F. Supp. 3d 270, 306 (D. Md. 2022) (requiring only that a matter be "kept private"). A consumer who enters a credit card number into a checkout form retains a reasonable expectation of privacy that it will not be simultaneously transmitted to undisclosed third-party analytics firms. Compl. ¶¶ 192, 231. Defendants' assertion that the communications "were not intended to be private as to Defendants," Mot. at 15, ignores that the data was transmitted to undisclosed SRC Providers entirely outside the scope of the consumer's transaction.

Courts in this Circuit and elsewhere have held that plaintiffs have a reasonable expectation of privacy in their interactions with websites online. *See*, *e.g.*, *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 604 n.7 (9th Cir. 2020) (even when on the internet, "individuals maintain the expectation that entities will not be able to collect such broad swaths of personal

information absent consent[]"). "Unlike the disclosure of private information, the harm caused by intrusion upon seclusion does not turn on the exposure of personal or sensitive information." *Cook v. GameStop, Inc.*, 148 F.4th 153, 160 (3d Cir. 2025) (citation modified). Rather, "the tort consists solely of an intentional interference with the plaintiff's interest in solitude or seclusion, either as to his person or as to his private affairs or concerns." *Id.*; *see also Delong v. PHE, Inc.*, 2026 WL 2075564, at *3 (E.D. Pa. July 16, 2026).

Plaintiffs have plausibly pled their expectation of privacy in their payment and billing information, especially at this stage of then proceedings. Whether an intrusion transgresses that expectation of privacy is a fact question which cannot be resolved at the motion to dismiss phase. *See BJ's Wholesale Club*, 2023 WL 4456956, at *6-7. Defendants' motion should therefore be denied.

**B. Defendants' Conduct Is Highly Offensive.**

The Third Circuit has already rejected Defendants' argument that their use of SRC and collection of Plaintiffs' personal and financial information is not highly offensive. *BPS*, 175 F.4th at 434 (noting capture of personal and financial information was "rightly viewed as highly sensitive" and plaintiffs' injuries were "analogous to the tort of intrusion upon seclusion."). Courts routinely uphold such claims. *See*, *e.g.*, *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 292 (3d Cir. 2016) (defendant's behavior to be highly offensive where online tracking was accomplished through "deceit and disregard"); *Google I*, 806 F.3d at 151 (conduct "highly offensive" where defendant's alleged intrusions were surreptitious). The Ninth Circuit confirmed that a disclosure could be offensive if it involved "sensitive medical or *financial information*." *Popa v. Microsoft Corp.*, 153 F.4th 784, 791–92 (9th Cir. 2025) (emphasis added). Moreover, "whether an intrusion qualifies as unreasonable, as well as either substantial or serious, presents a

question of fact." *Polay*, 10 N.E.3d at 1127; *Hazel v. Prudential Fin., Inc.*, 2023 WL 3933073, at *5 (N.D. Cal. June 9, 2023).

Plaintiffs have adequately pled offensive conduct by Defendants through their surreptitious interception and collection of Plaintiffs' and other website visitors' communications—non-stop and in real time, including during financial transactions—comprises highly offensive conduct. Compl. ¶¶ 83–91.

**IV. Plaintiffs State a Viable Computer Fraud and Abuse Act ("CFAA") Claim.**

Relying on a tortured description of the purpose of the CFAA and citing out-of-Circuit cases, Defendants assert Plaintiffs failed to state a CFAA claim. This is contrary to the Third Circuit's guidance on the elements of a CFAA claim and Plaintiffs' well-pleaded Complaint.

Plaintiffs bring their CFAA claim under 18 U.S.C. §§ 1030(a)(2) and (a)(2)(C). Compl. ¶ 157. The Third Circuit, reading the plain statutory text, has held: "The Act creates a cause of action for persons 'who suffer[ ] damage or loss' because, inter alia, a third party 'intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains ... information from any protected computer.'" *Google I*, 806 F.3d at 148 (quoting 18 U.S.C. § 1030(a)(2)(C), (g)). Defendants do not dispute they obtained information from Plaintiffs' "protected computers" but argue they had authorization to do so and that Plaintiffs' damage or loss allegations are lacking. (Mot. at 17–19.). The are wrong for several reasons.

First, Plaintiffs adequately allege Defendants' use of SRC exceeded their authorized access to Plaintiffs' computers. As the Third Circuit explains, in light of the Supreme Court's reasoning in *Van Buren v. United States*, 593 U.S. 374, 396 (2021), an individual "exceeds authorized access," even if he or she has authority to access a particular computer, by "obtain[ing] information *located in particular areas of the computer*—such as files, folders, or databases—*that are off limits*

*to him [or her.]*" *NRA Grp., LLC v. Durenleau*, 154 F.4th 153, 166 (3d Cir. 2025) (quoting *Van Buren*, 593 U.S. at 396). Plaintiffs each allege that, using their computers to transmit electronic communications to Defendants' websites, they authorized Defendants to access those computer-generated commands, *i.e.*, the *outputs* of their mouse and keyboard interactions with their computer and web browser. Compl. ¶¶ 93–95, 99–112. Plaintiffs allege they did not consent to Defendants' use of third-party SRC to record the *inputs* that led their computers to send those commands, including inputs that never became commands by "click[ing] a 'submit' or 'enter' button on the website." *Id.* ¶¶ 69, 107. Defendants incorrectly characterize these inputs as occurring on their websites, but the Complaint is clear the SRC "insert[s] computer code into the various event handling routines that web browsers use to receive inputs from" Plaintiffs' computer systems *before* they are converted into an actionable command to the relevant website, such as a mouse movement that does not result in a click, or an unsubmitted text entry. *Id.* ¶¶ 61–63, 69. Plaintiffs also allege these raw inputs are sent by Defendants to a server "exclusively controlled by the third-party entity that wrote the SRC, rather than the owner of the website where the code is installed," an entity to whom Plaintiffs gave no authorization. *Id.* ¶ 62.

Thus, Plaintiffs allege Defendants accessed an off-limits area of their computers—the part of their web browsers and computer systems that converts the raw inputs from their mouses and keyboards into commands for a website—beyond what they are authorized to access and also transmitted that information to a third party with no authorization whatsoever. *See NRA Grp.*, 154 F.4th at 166. A District Court recently found similar allegations sufficient to plead a defendant exceeded authorization under the CFAA. *See Wendover Prods., LLC v. PayPal Inc.*, 2026 WL 1799239, at *9–10 (N.D. Cal. June 22, 2026) (allegations application intentionally installed on consumer's web browser exceeded authorization by replacing one web cookie with another

without consumer's knowledge stated a claim); *accord FMHUB, LLC v. MuniPlatform, LLC*, 2021 WL 1422873, at *6 (D.N.J. Apr. 15, 2021) (CFAA claim survived to extent plaintiff alleged former employee accessed "back-end, development infrastructure of Plaintiff's website," for which he lacked authorization). Just as in *PayPal*, Defendants' website has an undisclosed function that collects information (Plaintiffs' raw inputs) before they are translated into a command to the website which is beyond what Plaintiffs authorized them to collect by visiting the websites. *See PayPal*, 2026 WL 1799239, at *9–10. Once in this "off limits" area, Defendants compound the violation by sending the raw inputs to a third party of whom Plaintiffs are entirely ignorant. *Van Buren*, 593 U.S. at 396; *accord Google I*, 806 F.3d at 148; *FMHUB*, 2021 WL 1422873 at *6.

Plaintiffs also sufficiently plead the "damage or loss" element of the CFAA. Both the statutory definitions of "damage" and "loss" "focus on technological harms . . . of the type unauthorized users cause to computer systems and data." *Van Buren*, 593 U.S. at 392. But while damage relates to "the integrity or availability of data, a program, a system, or information," the definition of loss focuses on "costs caused by harm to computer data," *id*. at 391 (quoting 18 U.S.C § 1030(e)), including "any reasonable cost to any victim," 18 U.S.C. § 1030(e)(11). Courts find unauthorized access that impairs the functionality of a plaintiff's computer systems adequate to plead damage. *See, e.g.*, *Ryanair DAC v. Booking Holdings Inc.*, 636 F. Supp. 3d 490, 503 (D. Del. 2022) (allegations defendants' actions "impair[ ] the ... availability and/or usability" of plaintiff's website and affected website response times were sufficient (alterations in original)); *PayPal*, 2026 WL 1799239 at *10–11 (swapping plaintiffs' cookies for defendant's impaired data "stored on consumers' web browsers" and "fits comfortably within CFFA's" purpose).

Plaintiffs allege both damage to the functionality of their computer web browsers and a loss related to the misappropriation of their private information. The Complaint explains how SRC

can circumvent web browser features for "private browsing," allowing users to restrict the data the websites they visit can retain about them, by creating a user "fingerprint" that allows the website provider to "back-reference all of that user's other web browsing," even private browsing. Compl. ¶¶ 70–75, 107–08, 158. Plaintiffs also allege "the Session Replay Codes are software designed to alter the operation of a website visitor's computer or mobile phone by instructing the hardware components of that physical device to run the processes that ultimately intercept the visitor's communications and transmit them to the third-party Session Replay Provider." *Id.* ¶ 119. Through Defendants' use of SRC, the efficacy of Plaintiffs' privacy protections on their web browsers is impaired and the operation of their devices is altered, constituting damage for purposes of the CFAA. *See Ryanair*, 636 F. Supp. 3d at 503; *PayPal*, 2026 WL 1799239 at *10–11. Plaintiffs also describe a cognizable loss through the appropriation of their sensitive data, which Plaintiffs explain can be exploited by Defendants and by potential cybercriminals. Compl. ¶¶ 76–82, 97, 104, 108, 116–118, 158–59. Accepting Plaintiffs' well-pled allegations, the Court cannot dismiss Plaintiffs' CFAA claim.

**V. Plaintiffs Adequately State their Conversion Claims (Counts VII and VIII).**

The elements of trespass to chattels "are essentially the same" as conversion. *QVC, Inc. v. Resultly, LLC*, 159 F. Supp. 3d 576, 600 (E.D. Pa. 2016). A trespass to chattel may be committed by using or intermeddling with a chattel in the possession of another. *Pestco, Inc. v. Associated Products, Inc.*, 880 A.2d 700, 708 (Pa. Super. 2005); *see also Creative Dimensions in Mgmt., Inc. v. Thomas Grp., Inc.*, 1999 WL 225887, at *3 (E.D. Pa. Apr. 16, 1999) (citing Restatement (Second) of Torts § 217 (trespass to chattels requires intentional dispossession or use or intermeddling with a chattel of another); § 222 (the actor is subject to liability for conversion where the dispossession "seriously interferes with the right of the other")).

Plaintiffs plausibly allege a physical interference. Plaintiffs plead their devices are chattel in that the devices are tangible, movable and transferable. Compl. ¶ 262. Plaintiffs plead BPS used Plaintiffs' and Class Members' devices by placing SRC directly on their devices. *Id.* ¶ 265. SRC embedded by Defendants transferred Plaintiffs' data from their devices to the Cloud Storage Data Centers of the Session Replay Providers without Plaintiffs' permission or consent. *Id.* ¶¶ 265–66. This constitutes an action by Defendants to intentionally and directly intermeddle with Plaintiffs' property, and to exercise control or authority inconsistent with Plaintiffs' and Class Members' use and/or possession of the data contained on Plaintiffs' devices. *Id.* ¶ 264.

Plaintiffs adequately allege intent. Plaintiffs plead Defendants knowingly, willfully, and intentionally procured the interception of, and used, the electronic communications and data contained on Plaintiffs' and Class Members' physical property without their knowledge or prior consent. *Id.* ¶¶ 4, 28, 247. Plaintiffs also plead Defendants intentionally intermeddled with Plaintiffs' devices by transferring data from Plaintiffs' devices to Cloud Storage Data Centers of the Providers without permission or consent from Plaintiffs. *Id.* ¶ 249. Indeed, BPS knew with certainty that its intentional placing of SRC directly on Plaintiffs' devices would result in intermeddling with Plaintiffs' chattel.

## **CONCLUSION**

For all of the reasons stated herein, Defendants' motion should be denied in its entirety.

Date: September 3, 2026

Respectfully submitted

By: /s/ Nicholas A. Colella

Nicholas A. Colella (PA Bar # 332699)
Gary F. Lynch (PA Bar # 56887)
Kelly K. Iverson (PA Bar # 307175)
Jamisen Etzel (PA Bar # 311514)
Patrick Donathen (PA Bar # 330416)
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: (412) 322-9243
NickC@lcllp.com
Gary@lcllp.com
Kelly@lcllp.com
Jamisen@lcllp.com
Patrick@lcllp.com

Kate M. Baxter-Kauf
Karen Hanson Riebel
Maureen Kane Berg
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
kmbaxter-kauf@locklaw.com
khriebel@locklaw.com
mkberg@locklaw.com

Ari H. Marcus (PA Bar # 322283)
**MARCUS & ZELMAN LLC**
701 Cookman Avenue, Suite 300
Asbury Park, NJ 07712
Tel: (732) 695-3282
ari@marcuszelman.com

*Plaintiffs' Co-Lead and Liaison Counsel*

Joseph P. Guglielmo
Ethan S. Binder
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Ave., 24th Floor
New York, NY 10169
Tel: (212) 223-6444
jguglielmo@scott-scott.com

ebinder@scott-scott.com

MaryBeth V. Gibson
**THE FINLEY FIRM, P.C.**
3535 Piedmont Rd.
Building 14, Suite 230
Atlanta, GA 30305
Tel: (404) 978-6971
mgibson@thefinleyfirm.com

Steven M. Nathan
**HAUSFELD LLP**
33 Whitehall Street Fourteenth Floor
New York, NY 10004
Tel: (646) 357-1100
snathan@hausfeld.com

James J. Pizzirusso
**HAUSFELD LLP**
1200 17th Street N.W. Suite 600 Washington, D.C. 20036
(202) 540-7200
jpizzirusso@hausfeld.com

*Plaintiffs' Steering Committee*