**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: BPS DIRECT, LLC and CABELA'S, LLC, WIRETAPPING | MDL NO. 3074<br>2:23-md-03074-MAK |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

Erin (Loucks) Leffler (PA ID No. 204507)
**Shook, Hardy & Bacon L.L.P.**
Two Commerce Square
2001 Market St., Suite 3000
Philadelphia, PA 19103
Phone: (215) 278-2555
Fax: (215) 278-2594
eleffler@shb.com

Jennifer A. McLoone (admitted *pro hac vice*)
**Shook, Hardy & Bacon L.L.P.**
201 South Biscayne Boulevard
Suite 3200
Miami, FL 33131-4332
Phone: (305) 358-5171
Fax: (305) 358-7470
jmcloone@shb.com

***Counsel for Defendants***

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

I. Plaintiffs Still Lack Article III Standing ..... 1

II. Plaintiffs Lack Standing To Seek Injunctive Relief. ..... 3

III. Plaintiffs' Wiretap Claims Fail. ..... 3

A. Plaintiffs Do Not Allege Interception of any "Contents" Under the Federal, Massachusetts, and Pennsylvania Acts. ..... 3

B. BPS's Party Status Precludes Claims Under the Federal Act (Count I). ..... 4

C. Plaintiffs Do Not Allege a Contemporaneous "Interception." ..... 4

D. Session Replay Software Is Not a "Device" under the Massachusetts and Pennsylvania Acts, But If It Is Then It Is A Tracking Device. ..... 5

IV. Plaintiffs' Invasion Of Privacy Claims (Counts IV And VI) Should Be Dismissed. ..... 6

A. Plaintiffs Had No Reasonable Expectation of Privacy in Their Mouse Clicks, Mouse Movements, URLs Visited, or Keystrokes. ..... 6

B. BPS's Use of Session Replay Software Is Not "Objectionable to a Reasonable Person" and Is Not "Highly Offensive." ..... 7

V. Plaintiffs Fail To State A Claim For Violation Of The CFAA (Count II). ..... 7

VI. Plaintiffs' Do Not State Their Conversion Claims (Counts VII and VIII). ..... 8

CONCLUSION ..... 9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re BPS Direct, LLC*,
705 F. Supp. 3d 333 (E.D. Pa. 2023)........3

*Cardoso v. Whirlpool Corp.*,
2021 WL 2820822 (S.D. Fla. July 6, 2021)........4

*Cook v. Gamestop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023)........4

*Eagle v. Morgan*,
2011 WL 6739448 (E.D. Pa. Dec. 22, 2011)........8

*Garcia v. Yeti Coolers, LLC*,
2023 WL 5736006 (C.D. Cal. Sep. 5, 2023)........5

*Goldstein v. Costco Wholesale Corp.*,
559 F. Supp. 3d 1318 (S.D. Fla. 2021)........4, 6

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015)........3, 4

*Hartig Drug Co. v. Senju Pharm. Co.*,
836 F.3d 261 (3d Cir. 2016)........1, 2

*Jacome v. Spirit Airlines*,
2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021)........4, 6

*Laborde v. Mount Airy Casino*,
2016 WL 7735566 (M.D. Pa. Oct. 28, 2026)........4, 6

*Massie v. General Motors LLC*,
2022 WL 534468 (D. Del. Feb. 17, 2022)........6

*Rodriguez v. Google LLC*,
327 2021 WL 2026726 (N.D. Cal. May 21, 2021)........4

*Van Buren v. United States*,
141 S. Ct. 1648 (2021)........7

*Wendover Prods., LLC v. PayPal Inc.*,
2026 WL 1799239 (N.D. Cal. June 22, 2026)........8

**Page**

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ....................................................................4

## INTRODUCTION

### I. Plaintiffs Still Lack Article III Standing

As explained in BPS's motion, Plaintiffs still lack Article III standing because the session replay that was installed on BPS's websites never transmitted payment information (including payment card numbers, expiration dates, or CVVs) to the session replay vendor. (Mot. at 5-6). BPS properly raised this challenge to Plaintiffs' standing as a factual attack, relying on a previously submitted declaration of Doug Cadmus that was submitted to the Court in the course of discovery. *Id.*; ECF No. 76-1.

Plaintiffs respond to this factual attack on standing in two ways. First, they argue that the declaration is insufficient because Plaintiffs allege that Microsoft and Mouseflow were also session replay vendors for BPS. Second, they argue that the Cadmus declaration leaves open the question of whether payment card information was captured by the session replay code. Neither of these responses has any merit.

As to the first, Plaintiffs do allege that Microsoft and Mouseflow were session replay vendors in their Complaint. However, in response to a factual challenge to standing, "[n]o presumptive truthfulness attaches to the plaintiff's allegations." *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016). And as Plaintiffs know from prior discovery, and as is confirmed by the Cadmus declaration itself, Quantum Metric was the only session replay during the relevant time period for Mr. Cadmus's declaration. *See* ECF No. 76-1, ¶ 3 ("Quantum Metric has been *the* session replay vendor providing session replay services for basspro.com and cabelas.com since 2019.") (emphasis added).[1]

[1] To put a finer point on this issue, Plaintiff Cornell alleges one purchase made on Defendants' website in July 2022. Am. Compl. ¶¶ 92-94. Plaintiff Montecalvo alleges purchases made since

On the second argument, Plaintiffs try to manufacture questions regarding the Cadmus declaration, but those questions do not create any real dispute with Mr. Cadmus's testimony. Plaintiffs question whether payment information was masked throughout the entire class period and whether it was masked "as an individual typed out her card number, or only once the card number appeared in its entirety in the form field." Opp. at 5. But Plaintiffs offer nothing to suggest that either of those questions is actually in dispute. Indeed, they offer nothing whatsoever that actually contradicts Mr. Cadmus's clear statement that "credit card number, expiration date, and CVV" are "masked and *not transmitted to Quantum Metric or Bass Pro/Cabela's*." ECF No. 76-1, ¶ 9. Likewise, whether in place during the entire class period is irrelevant as it relates to analyzing these particular Plaintiffs' standing. When faced with a factual attack on standing, Plaintiffs bear the burden of proving that standing exists. *Hartig*, 836 F.3d 261, 268 (3d Cir. 2016). They have not done so and their complaint should be dismissed.

Plaintiffs cite to the *Laborde* case in asking the Court to open jurisdictional discovery rather than granting BPS's motion. Opp. at 5 (citing *Laborde v. Mount Airy Casino*, 2016 WL 7735566, at *8 (M.D. Pa. Oct. 28, 2016), *report and recommendation adopted*, 2017 WL 114085 (M.D. Pa. Jan. 11, 2017). But *Laborde* did not involve a factual challenge to standing (or any other challenge to standing). It thus says nothing about whether the Court can grant BPS's motion. To the contrary,

---

2019, Am. Compl. ¶ 99, with one particular purchase of interest for this lawsuit, Am. Compl. ¶ 100, made on December 1, 2021. *See* Document Montecalvo_000004, attached as Exhibit A. Plaintiffs served a subpoena on Mouseflow during this lawsuit and Mouseflow explicitly stated that Defendants have not been Mouseflow customers since 2019. *See* Exhibit B. Plaintiffs' allegations regarding Mouseflow are therefore entirely irrelevant to a standing analysis. Similarly, Plaintiffs are well-aware that Microsoft Clarity was not used for session replay on Defendants' websites. *See* Defendants' Ans. To Interrog. No. 5 (filed as an excerpt due to confidentiality), attached as Exhibit C. Exhibit C also clarifies the Mouseflow dates of use.

Plaintiffs have been on notice of these facts since 2023 and nonetheless filed their Second Amended Complaint knowing that the allegations made therein have already been refuted.

## II. Plaintiffs Lack Standing To Seek Injunctive Relief.

Plaintiffs do not squarely address BPS's arguments regarding their lack of standing to seek injunctive relief. They do not dispute that they are now on notice of the use of session replay on BPS's website. And they do not so much as mention this Court's prior, undisturbed analysis on this precise issue—much less explain why the Court was wrong the first time. As this Court properly held during the first round of motion to dismiss briefing, Plaintiffs lack standing to pursue injunctive relief. *In re BPS Direct, LLC*, 705 F. Supp. 3d 333, 366-67 (E.D. Pa. 2023).[2] That law of the case should not be disturbed.

## III. Plaintiffs' Wiretap Claims Fail.

Plaintiffs' arguments regarding their wiretap claims are unpersuasive. Each of those claims fails for the reasons described in BPS's motion.

### A. Plaintiffs Do Not Allege Interception of any "Contents" Under the Federal, Massachusetts, and Pennsylvania Acts.

Plaintiffs do not persuasively argue that they have alleged the interception of any "contents." Plaintiffs' reliance on *In re Google Inc. Cookie Placement Consumer Priv. Litigation* on this point is misplaced. There, the Third Circuit was dealing with the alleged collection of what it described as "highly detailed URLs," not session replay data. *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 139 (3d Cir. 2015). In contrast, the simple mouse movements, keystrokes, and mouse clicks that are allegedly collected by session replay are frequently found by courts to not constitute "contents" of communications under wiretapping

[2] On appeal, Plaintiffs did not challenge this Court's prior holding on injunctive relief.

statutes. *See, e.g.*, *Cook v. Gamestop, Inc.*, 689 F. Supp. 3d 58, 70-72 (W.D. Pa. 2023); *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1321 (S.D. Fla. 2021); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1082–83 (C.D. Cal. 2021); *Jacome v. Spirit Airlines, Inc.*, 2021 WL 3087860 at *4 (Fla. Cir. Ct. June 17, 2021); *Cardoso v. Whirlpool Corp.*, 2021 WL 2820822, at *2 (S.D. Fla. July 6, 2021).

Plaintiffs fail to allege interception of "contents" and all of their wiretap claims fail.

**B. BPS's Party Status Precludes Claims Under the Federal Act (Count I).**

Plaintiffs do not—and cannot—contest the fact that Defendants are parties to any alleged communication at issue here. Instead they argue that they have alleged that BPS's intent in using the session replay software was to invade Plaintiffs' privacy. Opp. at 16. But none of the complaint paragraphs that they cite to actually alleges that. To the contrary, some of the paragraphs they cite make BPS's point. Plaintiffs have alleged BPS's purpose was to make money, not to perpetuate torts on all of its website visitors. *See, e.g.*, Compl. ¶¶ 25 ("Defendants actively use the data collected . . . to specifically target citizens of each state with marketing and advertising content which results in an increased profit . . ."), 43 ("Defendants have profited from Plaintiffs' Website Communications and have profited from the collection of Plaintiffs' data."). As explained in BPS's motion, increasing profit margins is not a tortious purpose. *See also Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 n.8 (N.D. Cal. May 21, 2021) (no tortious purpose under the federal act where defendant's "purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money").

The crime-tort exception does not apply and Plaintiff's ECPA claim fails.

**C. Plaintiffs Do Not Allege a Contemporaneous "Interception."**

Plaintiffs do not dispute that a contemporaneous interception is required to state a claim under the Federal act. Instead, Plaintiffs rely on case law that addresses allegations different from

those contained in Plaintiffs' Complaint. Opp. at 17 (citing *Garcia v. Yeti Coolers, LLC*, 2023 WL 5736006, at *4 (C.D. Cal. Sep. 5, 2023)). Here, unlike Plaintiffs' cited case law, Plaintiffs' own Complaint alleges that data on user interactions was "accumulated" and later sent "in blocks periodically throughout the user's website session." Am. Compl. ¶ 63. This alleged transmission is not contemporaneous and, accordingly, the ECPA claim should be dismissed.

### D. Session Replay Software Is Not a "Device" under the Massachusetts and Pennsylvania Acts, But If It Is Then It Is A Tracking Device.

In response to BPS's arguments that session replay code is not a "device" under the Massachusetts and Pennsylvania statutes, and that, if session replay code is a device, it is a "tracking device," Plaintiffs make contradictory arguments that wiretap statutes need to be read broadly to include "devices" that were not originally contemplated by the wiretap statutes (Opp. at 10–11), but then that the Pennsylvania statute should be construed narrowly to limit "tracking devices" to those types of devices that were initially contemplated by the legislature. Opp. at 11–12. Plaintiffs cannot have it both ways.

As discussed more fully in BPS's Motion, a reasoned reading of the statutes and principles embodied in case law interpreting the statutes leads to the conclusion that a snippet of session replay code is not a "device." (Mot. at 12-13). Plaintiffs' opposition to that argument relies largely on cases not interpreting either the Massachusetts or the Pennsylvania acts. *See* Opp. at 10. And the limited cases Plaintiffs cite from Massachusetts or Pennsylvania primarily consider whether software applications that mimic the functionality of a traditional recording device, like a tape recorder, can be a "device" under wiretapping statutes. *See* Opp. at 11. But session replay code is not a an "application." Instead, as Plaintiffs allege, session replay code is merely "snippets of JavaScript computer code" that Defendants allegedly embedded on their websites. Am. Compl. ¶

1. As session replay code is not a "device," the Massachusetts and Pennsylvania claims should be dismissed.

But if the Court interprets the statutory definitions of "devices" broadly enough to include those snippets of code, then it certainly should also be considered a "tracking device" under the Pennsylvania act. Plaintiffs' Amended Complaint is rife with references to Defendants allegedly using the session replay code to "track" their customers. *See* Am. Compl. ¶¶ 27, 84, 96, 103, 248, 265. While the caselaw is mixed and there is no binding authority on either side, the *Jacome* and *Goldstein* cases cited by BPS (Mot. at 14) demonstrate that this type of "tracking" lands session replay code within the definition of "tracking device" in the Pennsylvania statute.

## IV. Plaintiffs' Invasion Of Privacy Claims (Counts IV And VI) Should Be Dismissed.

Plaintiffs' arguments regarding their common law invasion of privacy claims are unavailing. Counts IV and VI should be dismissed.

### A. Plaintiffs Had No Reasonable Expectation of Privacy in Their Mouse Clicks, Mouse Movements, URLs Visited, or Keystrokes.

Plaintiffs claim that they have "alleged they had a reasonable expectation of privacy in the personal and financial information they typed into Defendants' websites." Opp. at 13. That assertion notably has no citation to Plaintiffs' actual allegations. Plaintiffs also assert that the Third Circuit, in the appeal of the Court's prior motion to dismiss ruling, held that users whose credit or debit card numbers were captured assert a cognizable harm. Opp. at 14. But as discussed in BPS's motion, Plaintiffs still have not actually even alleged that their credit card numbers or debit card numbers were ever even put into BPS's websites—much less disclosed without consent. Mot. at 5-6. Nor could they do so truthfully.

Plaintiffs are thus left with allegations that are consistent with those that have already been rejected by courts addressing session replay software. *See Massie v. General Motors LLC*, 2022

WL 534468, at *2, *5 (D. Del. Feb. 17, 2022) ("Plaintiffs fail to explain how either [defendant's] possession of anonymized, non-personal data regarding their browsing activities on [a defendant's] website harms their privacy interests in any way.").

### B. BPS's Use of Session Replay Software Is Not "Objectionable to a Reasonable Person" and Is Not "Highly Offensive."

Plaintiffs similarly fail to establish that any alleged conduct by BPS is highly offensive. In response, Plaintiffs try to contort the Third Circuit's standing analysis into a merits ruling that the use of session replay software satisfies the "highly offensive" element of an intrusion upon seclusion claim. But the Third Circuit did not take any view on the merits of Plaintiffs' claims.

Plaintiffs do not grapple with any of the cases that BPS cites (Mot. at 16-17) that actually do address this prong of Plaintiffs' intrusion claims. As discussed in BPS's motion and as demonstrated by that cited authority, Plaintiffs have not adequately alleged that BPS undertook any highly offensive conduct and their claim must be dismissed.

## V. Plaintiffs Fail To State A Claim For Violation Of The CFAA (Count II).

BPS's motion explained that to successfully state a claim under the CFAA Plaintiffs must allege that BPS "accessed" Plaintiffs' devices. Mot. at 18; *see also Van Buren v. United States*, 141 S. Ct. 1648, 1662 (2021) ("an individual 'exceeds authorized access' [under the CFAA] when he accesses a computer—such as files, folders, or databases—that are off limits to him."). In response, Plaintiffs do not contend that BPS accessed any files, folders, or databases on Plaintiffs' devices. Instead, they attempt to draw a distinction between the "inputs" of their mouse and keyboard interactions with the "outputs" of their mouse and keyboard interactions. Opp. at 17. Plaintiffs argue that they authorized BPS to record the outputs, but not the inputs. The citations

that Plaintiff makes to their Complaint say nothing about this distinction and Plaintiffs cannot rewrite their Complaint in opposition to a motion to dismiss.[3]

BPS also argued that Plaintiffs' CFAA claim fails because Plaintiffs did not adequately allege any "damage" to their systems under the CFAA's definition. Mot. at 18. Plaintiffs do not contradict BPS's point that the CFAA requires "an impairment *to a computer or computer system*." *Eagle v. Morgan*, 2011 WL 6739448, at *8 (E.D. Pa. Dec. 22, 2011). Instead they claim that they have satisfied the requirement by making general allegations about how session replay code "can" circumvent certain web browser settings or create a "fingerprint" of users. Opp. at 18-19. This is insufficient for two reasons. First, Plaintiffs point only to allegations about what session replay *can* do—not anything about what the session replay code here *actually* did. Second, even the general allegations that Plaintiffs point to do not reference any potential impairment of Plaintiffs' devices.

Plaintiffs do not state a claim under the CFAA and Count II should be dismissed.

## VI. <u>Plaintiffs' Do Not State Their Conversion Claims (Counts VII and VIII).</u>

Plaintiffs' opposition does not mention, much less distinguish, any of the authority cited within BPS's motion. *See* Opp. at 19-20. Indeed, other than citing cases delineating the elements for claims of trespass to chattels and conversion, Plaintiffs do not cite a single piece of authority in response. For the reasons outlined in BPS's motion (Mot. at 19-20), Plaintiffs fail to state a claim for either trespass to chattels or conversion. Counts VII and VIII should be dismissed.

[3] Plaintiffs' citation to *Wendover Prods., LLC v. PayPal Inc.*, 2026 WL 1799239, at *9-10 (N.D. Cal. June 22, 2026) does not save their CFAA claim on this point. *Wendover* did not consider the issue of whether the use of session replay code on a consumer website constitutes a CFAA violation. Instead, it dealt with claims between two competing digital companies over allegations that one of the companies created a web application that would engage in "cookie stuffing" that allegedly resulted in the company stealing commissions from online affiliate marketers. This has no bearing on this case.

## CONCLUSION

For these reasons, and those contained in BPS's motion, Plaintiffs' Complaint should be dismissed in its entirety.

Dated: September 10, 2026

Respectfully submitted,

By: */s/ Jennifer A. McLoone*

Jennifer A. McLoone (admitted *pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
Citigroup Center, Suite 3200
201 South Biscayne Boulevard
Miami, FL 33131-4332
Phone: (305) 358-5171
Fax: (305) 358-7470
jmcloone@shb.com

Erin (Loucks) Leffler (PA ID No. 204507)
**SHOOK, HARDY & BACON L.L.P.**
Two Commerce Square
2001 Market St., Suite 3000
Philadelphia, PA 19103
Phone: (215) 278-2555
Fax: (215) 278-2594
eleffler@shb.com

Maveric Ray Searle (admitted *pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
111 South Wacker Drive, Suite 4700
Chicago, IL 60606
Phone: (312) 704-7741
Fax: (312) 558-1195
msearle@shb.com

***Counsel for Defendants***